## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-DP-00045-SCT

*ERIC FUSELIER a/k/a ERIC S. FUSELIER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/14/95 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANTHONY J. BUCKLEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE |
| DISTRICT ATTORNEY: | JEANNENE T. PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY (DIRECT APPEAL) |
| DISPOSITION: | REVERSED AND REMANDED - 10/23/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/13/97 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. We are confronted with Eric Fuselier's third appeal before this Court from a capital murder conviction and death sentence in the Circuit Court of Jones County. Aggrieved by the conclusions in the lower court, Fuselier now raises thirteen assignments of error. Upon review of the record, we conclude that although most of Fuselier's assignments of error are meritless, the assignment involving the trial court's decision to allow the State to present evidence of Fuselier's flight warrants reversal of his conviction and sentence. Even though the issue is dispositive of this appeal, we also take this opportunity to address the propriety of our statute and rule of evidence precluding testimony from convicted perjurers. Henceforth, we will allow a convicted perjurer to testify and allow the jury to determine the weight and credibility of such testimony.

### I. BACKGROUND

¶2. Eric Fuselier was convicted and sentenced to death for the April 25, 1983 murder of Rose Gunter during the commission of a felony. Gunter was found in her bed, gagged, blindfolded and stabbed

forty-one times. Two days after the murder, Fuselier, who was an escapee from the Louisiana State Penitentiary, attempted to flee the home of Leslie Corley on foot. However, he was caught, arrested, tried, convicted of the murder and sentenced to death. In his first appeal, this Court reversed Fuselier's conviction and sentence and remanded the case for a new trial. *Fuselier v. State*, 468 So. 2d 45 (Miss. 1985)(*Fuselier I*). Upon remand, a plea bargain was arranged allowing Fuselier to plead guilty to both capital murder and burglary in exchange for a nonrecidivist life sentence for the capital murder and a consecutive twenty-five year sentence for the burglary. In his second appeal, this Court reversed Fuselier's conviction for capital murder and burglary again. We remanded the case for a new trial because of the failure of any separate indictment charging the offense of burglary and because sentencing the defendant separately for both felony murder and the underlying felony violated the Double Jeopardy Clause. *Fuselier v. State*, 654 So. 2d 519 (Miss. 1995)(*Fuselier II*). Fuselier was retried in the Circuit Court of Jones County, convicted of capital murder yet again, and sentenced to death on December 14, 1995. The trial court set an execution date of January 16, 1996, but the execution was stayed pending resolution of Fuselier's timely appeal to this Court.

## II. EVIDENCE OF FUSELIER'S FLIGHT

¶3. At Fuselier's second trial, the State adduced evidence that when law enforcement officers arrived at the home of Leslie Corley two days after the murder of Rose Gunter to arrest Fuselier and his co-indictee, David McFee, Fuselier jumped out of a window in the back of the Corley house and began running toward the woods. The officer chasing Fuselier racked his shotgun and ordered Fuselier to stop, which Fuselier did. Fuselier now contends that the evidence of flight was improperly admitted in his retrial. He argues that this Court, in its first opinion regarding this case, held that the evidence of flight could not be admitted.

¶4. Generally, it is a well-established principle that flight is admissible as evidence of consciousness of guilt. *Williams v. State*, 667 So. 2d 15, 23 (Miss. 1996). However, "an instruction that flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge." *Reynolds v. State*, 658 So. 2d 852, 856 (Miss.1995) (quoting *Fuselier I*, 468 So. 2d at 57). When determining whether a flight instruction is appropriate, this Court further has explained that two considerations are paramount: (1) only unexplained flight merits a flight instruction, and (2) flight instructions are to be given only in cases where that circumstance has considerable probative value. *Brown v. State*, 690 So. 2d 276, 293 (Miss. 1996); *Banks v. State*, 631 So.2d 748, 751 (Miss.1994). A flight instruction is appropriate where flight is "highly probative" to the facts of a particular case. Evidence of flight is inadmissible where there is an independent reason for flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant. *Williams*, 667 So. 2d at 23.

¶5. At his first trial, Fuselier argued that the evidence of flight was not probative of his guilt or guilty knowledge of Gunter's murder because, as an escapee, he had an independently sufficient reason to flee. *Fuselier I*, 468 So. 2d at 57. This Court, in *Fuselier I*, explained that "Fuselier was obviously put in a no-win situation by either being required to explain his flight and the fact that he was a prison escapee or not explaining the flight and subjecting himself to a flight instruction." *Id.* The Court held that the flight instruction should not have been granted because the trial judge was aware of an explanation for Fuselier's flight, but the jury was not. *Id.* "If Fuselier's flight is probative of his guilt or guilty knowledge of the Gunter murder, it is equally probative of his escape." *Id.*

¶6. In Fuselier's second trial, the State again offered evidence of Fuselier's flight, but did not offer an instruction on flight. Therefore, the jury was allowed to draw the same inference that this Court determined that the jury should not have been allowed to draw in the first trial, namely that Fuselier's flight was probative of his guilt or guilty knowledge in relation to Rose Gunter's murder. Nonetheless, evidence of Fuselier's flight was also probative of his escapee status.

¶7. *Mariche v. State*, 495 So. 2d 507 (Miss. 1986), and *Jimison v State*, 532 So. 2d 985 (Miss. 1988), both cited by Fuselier, are not applicable here. In those cases, this Court permitted flight instructions where there was evidence of flight and no independent reasons for flight. The juries were instructed in those cases that they could draw inferences of the defendants' guilt from the evidence of the defendants' flight. As stated previously, there was an independent reason for Fuselier's flight. A more appropriate case for comparison is *Mack v. State*, 650 So. 2d 1289 (Miss. 1994), wherein this Court reviewed a situation similar to that of Fuselier. Mack, the defendant, was charged with capital murder, and at the time of his flight was an escapee from prison. *Id.* at 1309. This Court again held that where "evidence of flight is probative of things other than guilt or guilty knowledge of the crime charged, such evidence should be excluded." *Id.* Further, this Court reasoned that "[i]f a prosecutor cannot give a jury instruction on flight because evidence of flight is probative of things other than the defendant's guilt or guilty knowledge, it follows that the prosecutor should not be allowed to place the evidence before the jury." *Id.* at 1310.

¶8. The State admits that it could not and did not give the jury an instruction on flight because the evidence of Fuselier's flight was probative of things other than his guilt or guilty knowledge. Therefore, the flight evidence was improperly admitted under *Mack*, 650 So. 2d at 1308-10, to which the State also admits. Now, however, the State argues that this error was harmless, relying on the harmless error analysis employed in *Mack*. Justice Banks, writing in *Mack*, described the evidence tending to establish Mack's culpability.

> Mack's two companions testified that Mack killed Fulton. Mack was placed at the scene of the murder by other witnesses. Mack told Fulton's neighbors not to go near Fulton's home. There was blood on the truck that Mack was driving, which Mack attempted to wipe off. Mack threatened to kill a teenager if the youngster mentioned what he had seen. The evidence of Mack's flight pales in comparison to more direct evidence of guilt. Its admission under the circumstances was harmless error.

*Mack*, 650 So. 2d at 1310.

¶9. The State's position here is disingenuous, particularly since this Court reversed *Fuselier I* based on the improper presentation of the evidence of Fuselier's flight. The error was not harmless then and is not harmless now. Additionally, although this Court made no attempt to set the evidence shown in *Mack* as a benchmark for harmless error analysis in such cases, the evidence of guilt in Fuselier's case is not entirely similar to that present in *Mack*. Fuselier's case is circumstantial. A witness placed Fuselier in the vicinity of the murder scene. Witnesses also placed Fuselier in the victim's car after her murder, in possession of the victim's stolen property. Testimony tends to show that Fuselier attempted to wash some bloody clothes, perhaps containing the blood of Rose Gunter. Additionally, Dr. Sergio Gonzalez testified that a knife seen in Fuselier's possession on many occasions could have been used in the murder of Rose Gunter. Significantly, however, the other person present at the crime

scene, McFee, was not allowed to testify. Fuselier alleges that McFee was going to state that he killed and raped Gunter. To apply the harmless error analysis, as the State would suggest, this Court must determine whether the weight of the evidence against Fuselier is sufficient to outweigh the harm done by allowing admission of flight evidence.

¶10. A critical factor weighing against the State's harmless error argument is the State's refusal to follow this Court's previous instructions. Most significantly, *Fuselier I*, in which this Court declared the same mistake made in the instant case to be reversible error, gave the State guidance as to how evidence of Fuselier's flight should have been treated in a subsequent trial. Additionally, it is interesting to note that the State tried this case after the decision in *Mack*, a case in which this Court made a thorough examination of *Fuselier I* and how flight evidence and instructions should be handled. Nevertheless, the State still managed to mishandle the presentation of the evidence at trial. It is this Court's sincere belief that the prosecuting attorneys in this case simply should have been more cognizant of our rulings, particularly since *Mack* was handed down over six months before Fuselier's second trial. Therefore, in light of the State's refusal to follow this Court's guidelines for admitting flight evidence, we find that the harm done by admitting evidence of Fuselier's flight outweighs the weight of the evidence against him. The error alleged by Fuselier necessitates reversal.

### III. PRECLUSION OF DAVID McFEE AS A WITNESS

¶11. Fuselier also contends that it was a violation of Mississippi Constitution Article III, § 26 to prevent witness David McFee from testifying because he had been convicted of perjury. Fuselier contends that he was denied the right to have compulsory process by reason of the trial court's refusal to permit McFee to testify.

¶12. At trial, the State asserted that McFee had to be excluded from testifying, pursuant to statute, because he had been convicted of perjury since the original Fuselier trial in 1983. *See McFee v. State*, 510 So. 2d 790 (Miss. 1987). Originally, David McFee and Eric Fuselier were jointly indicted for the capital murder of Rose Gunter, with the underlying felony being burglary. While in custody, McFee gave a sworn statement to police which implicated Fuselier in the crime. He subsequently gave another sworn statement further elaborating the same implicatory facts regarding Fuselier, but exculpatory to himself, claiming his own actions were only accessory after the fact. Upon these two sworn statements, McFee plea bargained and pled guilty to simple murder and received a life sentence. Subsequently, at the first capital murder trial of his co-indictee Fuselier, McFee testified materially and substantially different from his two previous sworn statements. *Id.* at 791-92. Due to the conflicts between McFee's testimony at Fuselier's first trial and McFee's pretrial statements, McFee was charged with and convicted of perjury. *Id.* at 792. *See* Miss. Code Ann. § 13-1-11.

¶13. The State relies on *White v. State*, 532 So. 2d 1207 (Miss. 1988), which affirms generally that a person convicted of perjury cannot be called as a witness. Further, the State relies on the Mississippi Rules of Evidence and the Mississippi Code, both of which address attempts by a party at trial to use the testimony of one who has been convicted of perjury. Miss. Code Ann. § 13-1-11 reads as follows:

> § 13-1-11. **Conviction, except for perjury or subornation of perjury, as no disqualification.**
>
> A conviction of a person for any offense, except perjury or subornation of perjury, shall not

disqualify such person as a witness, but such conviction may be given in evidence to impeach his credibility. A person convicted of perjury or subornation of perjury shall not afterwards be a competent witness in any case, although pardoned or punished for the same.

Along the same lines, Rule 601 of the M.R.E. reads as follows:

### RULE 601. GENERAL RULE OF COMPETENCY

Every person is competent to be a witness except as restricted by Mississippi Code Sections 13-1-5 (competency of spouses) and 13-1-11 (persons convicted of perjury or subornation of perjury), or by these rules.

¶14. Mississippi seems to be in small company with such a rule. Md. Code Ann. Cts. & Jud. Proc. § 9-104 (a person convicted of perjury may not testify); Vt. Stat. Ann. Tit. 12, § 1608 (a person shall not be incompetent as a witness in any court, matter or proceeding by reason of his conviction of a crime other than perjury, subornation of perjury, or endeavoring to incite or procure another to commit the crime of perjury).

¶15. Contrastingly, under the very great weight of judicial authority, including the Federal Rules of Evidence, all persons of competent understanding are permitted to testify to relevant facts within their knowledge. The former common-law rule disqualifying witnesses convicted of a crime is no longer followed in the federal courts, but such a conviction will be given due consideration in determining the credibility and weight of the testimony to be offered. "Every person is competent to be a witness except as otherwise provided in these rules." *F.R.E.* 601, General Rule of Competency. "A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence." *United States v. Bedonie*, 913 F.2d 782, 799 (10th Cir. 1990). "What must be remembered, and is often confused, is that 'competency' is a matter of status, not ability." *United States v. Moreno*, 899 F.2d 465, 469 (6th Cir. 1990).

¶16. Many states also have abandoned the archaic common law "*per se* incompetence" rule for convicted perjurers. For example, recently enacted Alabama Rule of Evidence 601 abrogates the historic statutory rule of incompetency applied to any witness who has been convicted of perjury. Additionally, the Arkansas Rules of Evidence track the federal rules, allowing a prior conviction of perjury to be introduced on cross-examination, but not allowing such a conviction to make the witness incompetent. Ark. Code Ann. § 16-41-101 (Rule 601). *See also* Ga. Code Ann. § 24-9-1 ("No person offered as a witness shall be excluded by reason of incapacity, for crime or interest or from being a party, from giving evidence, either in person or by deposition, . . ."); 42 Pa. Cons. Stat. Ann. § 5912 ("No person shall be deemed incompetent or otherwise disqualified as a witness in any criminal proceeding by reason of the person's having been convicted of perjury or subornation of or solicitation to commit perjury, but such conviction may be shown for the purpose of affecting the person's credibility."); W. Va. Code. § 57-3-5 ("Conviction of felony or perjury shall not render the convict incompetent to testify, but the fact of conviction may be shown in evidence to affect his credibility.").

¶17. Article III, § 26 of the Mississippi Constitution provides in part that an accused in a criminal prosecutions shall have a right "to have compulsory process for obtaining witnesses in his favor."

Miss. Code Ann. § 13-1-11 directly contradicts this constitutional provision, and as a result, M.R.E. 601 contradicts our Constitution as well. Compulsory process implicitly prevents the State from arbitrarily excluding testimony. In situations like the instant case, a district attorney is put in a discretionary position as to keeping the key witnesses competent to testify. Under the current Mississippi rules of evidence and procedure, if a district attorney is dissatisfied with the potential usefulness of a perjurer at trial, he may invoke the exclusion of that perjurer as a witness. In the same breath, a district attorney also can make the decision to forego prosecution of an individual for perjury to satisfy his needs at trial and prevent the exclusion of a witness. Hence, a district attorney is capable of keeping the admitted or suspected perjurer competent to testify and any disqualifying function of the statute is avoided. We believe that the state constitutional protection of compulsory process does not contemplate such power within the hands of the district attorney.

¶18. In *Stringer v. State*, 500 So. 2d 928 (Miss. 1986), the State tried to prevent a defense witness from testifying because the witness had been previously convicted of perjury. *Id.* at 937. The trial judge decided that it would allow the witness to testify, but the defense decided that they would not call the witness. *Id.* In addressing Stringer's claim that the prosecution intentionally deprived Stringer of his right to call the witness, this Court noted:

> [t]he right to examine Parker was not withheld by the court, but was precluded by the decision of the defendant's attorneys. Thus, Jimbo Stringer is procedurally barred from raising this issue on appeal. If that were not the case, this assigned error might well mandate the reversal of this case. The prosecution's maneuverings were obviously intended to prevent Stringer from exercising his fundamental right to call witnesses on his behalf. *We hope that this situation will not arise in the future.*

*Stringer*, 500 So. 2d at 937 (emphasis added).

¶19. This Court recognizes the nationwide trend to change evidentiary and procedural rules as to the competency of witnesses in all trials in federal and state courts. In most jurisdictions, convictions of felonies and infamous crimes like perjury are no longer considered a disqualification. Instead, evidence of such convictions go to the credibility and weight of the convicted witness's testimony. In the realm of competency of convicted perjurers to testify, Mississippi must disengage itself from the common law. "Truth is more likely to be arrived at by hearing testimony of all persons of competent understanding who may seem to have knowledge of facts involved in case, leaving credit and weight of such testimony to be determined by jury or by court." *Washington v. Texas*, 388 U.S. 14, 22 (1967); *Rosen v. United States*, 245 U.S. 467, 471 (1918). From now on, we will abandon the old M.R.E. 601, precluding testimony from convicted perjurers, in favor of a rule that allows a convicted witness to testify and that allows cross-examination of the witness regarding the perjury conviction. At that point, the jury should be allowed to make the final determination of the credibility and weight of the witness's testimony. We encourage the Legislature to take similar action in relation to Miss. Code. Ann. § 13-1-11.

## IV. CONCLUSION

¶20. Fuselier's conviction and sentence must be reversed based upon the improper admission of flight evidence. While it is unfortunate that the final resolution of this matter must be again delayed, we must remind prosecutors that pursuant to the Mississippi Constitution, any person charged with a

crime in this state is entitled to a fair and proper trial. In *Fuselier I* and in *Mack*, this Court made clear that neither evidence of flight nor an instruction on flight is permissible when the evidence of flight is probative of things other than the guilt of the defendant. We reiterate those holdings today. To paraphrase previous considerations by this Court, no person accused, however angry the people, however evil the crime, regardless of how strong the appearance of guilt, can be denied the full protection of the law and a fair and orderly trial. This is especially true where the forfeiture of a human life is a possible result. Let it be finally and clearly understood that this Court will not suffer its requirements to be repeatedly disregarded with impunity. *See* ***Griffin v. State***, 557 So. 2d 542, 553-54 (Miss. 1990). This case is hereby remanded for proceedings consistent with this opinion.

¶21. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS AND MILLS, JJ., CONCUR. ROBERTS, J., CONCURS AS TO PART III. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION. LEE, C.J., AND ROBERTS, J., JOIN THIS OPINION IN PART.**

**SMITH, JUSTICE, DISSENTING:**

¶22. The majority reverses Eric Fuselier's conviction and death sentence and remands for a third jury trial because of what the majority maintains was improper admission of evidence of Fuselier's flight when officers attempted to arrest him for the murder.

¶23. Additionally, the majority breaks from our long history of precedential case law as well as ignores the statute prohibiting convicted perjurers from testifying in court and now proclaims that convicted perjurers should be allowed to testify, and that a jury can simply determine the weight and credibility of such testimony. I disagree on both accounts and must dissent.

¶24. Admittedly, "[e]vidence of flight is inadmissible where there is an independent reason for flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant." ***Williams v. State***, 667 So. 2d 15, 23 (Miss. 1996). Here, the fact that Fuselier was an escaped inmate at the time could constitute an independent reason for Fuselier's flight. Flight evidence was also improperly admitted under ***Mack v. State***, 650 So. 2d 1289, 1308-1310 (Miss. 1994). The decision in ***Mack*** was handed down more than six months prior to Fuselier's second trial. The State is admittedly charged with following this Court's guidelines concerning the admission of evidence of flight by a defendant. The majority, acknowledges that this Court in ***Mack*** relied upon the harmless error analysis in concluding that "The evidence of Mack's flight pales in comparison to more direct evidence of guilt. Its admission under the circumstances was harmless error." ***Mack,*** 650 So. 2d at 1310. However, the majority now claims that "this Court made no attempt to set the evidence shown in ***Mack*** as a benchmark for harmless error analysis in such cases." *Majority*, at 6. There is a meager attempt to distinguish the case at bar from ***Mack*** by claiming that Fuselier's case is circumstantial and suggesting that the evidence against Fuselier is meager at best, therefore, harmless error analysis is improper.

¶25. This Court should apply harmless error analysis to the case at bar. Is the State's evidence against Fuselier meager? The record reveals otherwise. Mrs. Rose Gunter was brutally murdered in her home in Jones County. The door to her into her home was open, her television and car was missing, and her bedroom door had been kicked in from the outside. She had been stabbed forty-one times to the front of her body.

¶26. Dr. Gonzalez's testimony was that more than one knife was probably used. Two knives were introduced into evidence, which Dr. Gonzalez testified could have caused all of the wounds. Larry Turner, a forensics serologist with the crime lab, testified that the knives showed evidence of human blood on their surfaces. The two knives were identified as having been in the possession of Fuselier and accomplice, David McFee.

¶27. McFee was living only one mile from Mrs. Gunter's home and Fuselier was staying with McFee at that time. McFee and Fuselier had spent the day of the murder working on a well pump in Leslie Corley's yard.

¶28. Ms. Corley testified that Fuselier was wearing a hunting knife while they were working on the pump, and that he wore this knife all the time. Ms. Corley noticed dried red blood on the carport. When washing clothes the next day she found an additional pair of jeans, bandannas and T-shirt that she had not placed in the machine. She testified that the T-shirt belonged to Fuselier. McFee awakened Ms. Corley in the early morning hours to tell her he was going to New Orleans.

¶29. Kenneth Robinson had observed two men at approximately 2:15 a.m. standing at the intersection in front of his house and after three minutes, they walked down the road away from Ms. Gunter's house.

¶30. Helen Graves testified that between 4:00 a.m. and 5:00 a.m. she saw a light colored late model car with a large television set in the trunk pass her on the highway at a high rate of speed. There was testimony that neither McFee nor Fuselier were employed at the time of the murder. There was also testimony from Ms. Corley that neither individual owned a vehicle.

¶31. Jerry Smith testified that Fuselier did not have scratches on his face while they were working on Ms. Corley's water pump. Smith noticed the red tint in the rain water Ms. Corley was washing clothes with the next day after the murder. He did not believe it was rust in the water, became afraid that Fuselier and McFee might still be in the house and left and reported to the Sheriff.

¶32. McFee's mother, Ms. LeBlanc, testified that her son and Fuselier arrived at her home in New Orleans on the morning of April, 26, 1983, driving a gray or blue Oldsmobile. She stated that Fuselier had scratches on his face. She also testified that the two defendants had three necklaces, some jewelry, a fan, a television light, and a television in the trunk of their car that they left at her house. They tried to sell the television set to her for $100.00. She stated that the television set was too large and that it took both men to move it. All items were identified by Ms. Gunter's daughter as belonging to Ms. Gunter.

¶33. Ricky Holmes, who owned a body shop in New Orleans, testified that Fuselier and McFee drove up to his shop the day after the murder in a light colored Oldsmobile. McFee instructed Holmes to repair the car and drive it back to Laurel, Mississippi.

¶34. Meager, flimsy, evidence offered by the State as suggested by the majority in order to distinguish this case from *Mack*? Indeed! The evidence submitted by the State in the case at bar is certainly equal to and as convincing as that evidence cited by this Court in *Mack* and held to be sufficient to allow harmless error analysis. I would affirm on this issue.

¶35. Finally, the majority, incredibly in one fatal swoop, overrules long standing case law and ignores the statute regarding the prohibition of one convicted of perjury from being able to subsequently testify under oath. Again, I disagree with the majority on this important issue and accordingly dissent.

¶36. The Mississippi Legislature in its infinite wisdom has determined that "A person convicted of perjury or subornation of perjury shall not afterwards be a competent witness in any case, although pardoned or punished for the same." Miss. Code Ann. § 13-1-11 (1972). Additionally, Miss. R. Evid. 601(b) states that, "Every person is competent to be a witness except . . . person[s] convicted of perjury or subornation of perjury . . . even though pardoned or punished for the same." The majority hangs its reversal on the fact that, "Mississippi seems to be in small company with such a rule." *Majority*, at 8. Then, the majority proceeds to cite numerous instances where both the federal jurisdictions and many states have "abandoned the archaic common law "*per se" incompetence"* rule for convicted perjurers. It is more than noteworthy however that the majority only cites cases or the Rules of Evidence where those states have statutes which allow convicted perjurers to testify.

¶37. The majority acknowledges that the Mississippi Legislature has adopted a statute prohibiting a convicted perjurer from testifying. The majority's only course of action is to declare that Article III, § 26 of the Mississippi Constitution concerning compulsory process for obtaining witnesses directly contradicts the statute. Thus, the Majority declares that the statute is unconstitutional.

¶38. The majority faults the district attorney here, claiming that the district attorney, "is in a discretionary position as to keeping the key witnesses competent to testify," and that "Under the current Mississippi rules of evidence and procedure, if a district attorney is dissatisfied with the potential usefulness of a perjurer at trial, he may invoke the exclusion of the perjurer as a witness," and "in the same breath, a district attorney also can make the decision to forego prosecution of an individual for perjury to satisfy his needs at trial and prevent the exclusion of a witness." *Majority*, at 10.

¶39. Here, it is unassailable that David McFee committed perjury during the first Fuselier trial. There is also no question that the district attorney, made aware of such perjury, under the oath of that office, prosecuted McFee and convicted him for committing perjury. This Court upheld that conviction and sentence. See *McFee v. State*, 510 So. 2d 790 (Miss. 1987). The majority now faults the district attorney for following his oath and prosecuting McFee for violating the statute for giving false testimony in the first Fuselier trial. Nor is this situation one in which the district attorney has "repeatedly disregarded with impunity" the requirements mandated by this Court, as claimed by the majority.

¶40. This Court could have declared the statute unconstitutional in *McFee*, but did not do so. In *Stringer v. State*, 548 So. 2d 125, 129 (Miss. 1989), where Stringer contended that the trial court erred by not requiring the witness Parker to testify at retrial, this Court held that Stringer's claims were without merit, stating that "Both the Mississippi Rules of Evidence and the Mississippi Code

Annotated address attempts by a party at trial to use the testimony of one who has been convicted of perjury." The Court, considering that Parker was convicted of perjury found that, "Under the clear and unequivocal language of § 13-1-11 and Rule 601, he was prohibited from testifying in the first place." *Id*. at 130. The Court thus declined at that time to declare the statute unconstitutional. In *Turner v. State*, 673 So. 2d 382 (Miss. 1996), the Court again held:

> The judge was correct in ruling that the testimony and affidavit of Cole (the CI) were inadmissible under M.R.E. 601(b), which states that "[a] person convicted of perjury or subornation of perjury shall not be a competent witness in any case, even though pardoned or punished for the same."

*Turner*, 673 So. 2d at 384.

¶41. The statute does not prevent whole categories of defense witnesses from testifying on the basis that they are unworthy of belief. For that matter, the statute operates as a double edged sword, prohibiting both potential defense as well as prosecution witnesses from testifying if previously convicted of perjury. There is nothing archaic in Mississippi and other states following law practices which have proven over time to be moral, right, and just. The Sixth Amendment of the United States Constitution is not offended, nor is Sec. 26 of the Mississippi Constitution. Here, we are faced simply with a situation where the Mississippi Legislature's plenary power, subject to certain constitutional guarantees, regarding who shall be competent as witnesses in this state, certainly may legitimately decide that persons convicted of a felony shall not be competent witnesses subsequent thereto. Our Legislature enacted such a statute and I applaud the action of the Legislature. I find the statute to be sound constitutionally, and accordingly would affirm Fuselier's conviction, and not remand this case for a third retrial by a jury when two previous juries have spoken so emphatically on Fuselier's guilt. There is a need for finality in the case sub judice.

¶42. I respectfully dissent.

**LEE, C.J., AND ROBERTS, J., JOIN THIS OPINION IN PART.**