LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Ricky Godbolt was found guilty in the Hinds County Circuit Court of deliberate-design murder. He was sentenced to life in the custody of the Mississippi Department of Corrections.
¶ 2. Godbolt now appeals, asserting the trial court erred in instructing the jury on unexplained flight, as there was no evidence of immediate flight given.
FACTS
¶ 3. On December 12, 2008, Willie “Shell” McNair was present at Leonard’s Pool Hall in Jackson, Mississippi, along with approximately forty other people. McNair testified she saw Rodney Dishmon arrive at the club. Twenty to thirty minutes later, Godbolt entered the club. God-bolt asked McNair about Dishmon, and Godbolt took McNair to his car where he showed her a gun. McNair testified she tried to persuade Godbolt to leave the gun in the car. Dishmon exited the club, and an argument ensued between him and Godbolt. McNair testified that Godbolt fired a gun at Dishmon, and Dishmon fell backwards against a garbage dumpster. She testified Godbolt made several statements about shooting Dishmon before leaving the scene.
¶ 4. Two other witnesses spoke with the police. Sheila Bell had just arrived at the club and exited her car when she heard two men arguing. She recognized one of the men as Dishmon, and she stated the other man was facing away from her. She saw the other man was wearing black clothing and had “a funny hairdo.” Bell heard the gunshot, and she hid in a store near the club. Bell saw Dishmon slumped *988 over against a garbage dumpster and attempted to give him mouth-to-mouth resuscitation. Dishmon was pronounced dead at the scene.
¶ 5. The third witness, Sandra Quincy, testified she was inside the club when the gun was fired. She went outside and saw Godbolt standing over Dishmon’s body with a shotgun. Quincy testified that God-bolt went to his car, lit a cigarette, and said: “I don’t know why the motherf-f with me because I don’t f— with nobody.” She then saw Godbolt leave the scene in a gray, four-door car with rust spots.
¶ 6. The police were given a description of Godbolt and told that his nickname was “Sugar Man.” A “be on the lookout for,” or BOLO, alert was issued, but the police were unable to locate Godbolt. Godbolt was arrested approximately eight months later while panhandling in Hollywood, California.
STANDARD OF REVIEW
¶ 7. This Court reviews jury “instructions as a whole ‘to determine if the jury was properly instructed,’ giving abuse-of-discretion deference to the trial court’s decision.” Flowers v. State, 51 So.3d 911, 912 (¶5) (Miss.2010) (footnote omitted). “[Pjroposed instructions should generally be granted if they are correct statements of law, are supported by the evidence, and are not repetitious.” Green v. State, 884 So.2d 733, 737 (¶ 13) (Miss.2004).
DISCUSSION
¶ 8. The only issue in this appeal is the inclusion of jury instruction S-4. In this instruction, the jury was asked to weigh whether Godbolt fled or went into hiding after Dishmon was shot, and, if so, whether the flight was a result of Godbolt’s guilty conscious. Godbolt argues this instruction was prejudicial and not warranted by the evidence because the evidence failed to show he fled the scene or attempted to conceal himself from police.
¶ 9. Jury instruction S^l reads:
The Court instructs the Jury that flight is a circumstance from which in the absence of a reasonable explanation therefor, guilty knowledge and fear may be inferred. If you find from the evidence in this case, beyond a reasonable doubt that the defendant, Ricky Godbolt did flee or go into hiding after killing Rodney Dishmon, then the flight of Ricky Godbolt is to be considered in connection with all other evidence in this case. You will determine from all the facts whether the flight was from a conscious sense of guilt or whether it was caused by other things, and give it such weight as you think it is entitled to in determining the guilt or innocence of Ricky Godbolt.
¶ 10. When determining whether a flight instruction is appropriate, “two considerations are paramount: (1) only unexplained flight merits a flight instruction, and (2) flight instructions are to be given only in cases where that circumstance has considerable probative value.” Fuselier v. State, 702 So.2d 388, 390 (¶ 4) (Miss.1997). “A flight instruction is appropriate where flight is ‘highly probative’ to the facts of a particular case.” Id.
¶ 11. Godbolt does not dispute that he left the scene of the murder. However, he argues he did not flee the scene in a hurry or as a result of direct confrontation by law enforcement. Thus, he argues his leaving the scene had no probative value to his guilt. Godbolt did not testify, but he argues the eyewitness testimony presented that he lit a cigarette before leaving the scene supports his assertion that he did not immediately flee. He also points out there was no testimony as to when he left for California or how long he had been there. For purposes of *989 allowing a jury instruction on flight, it is not relevant how quickly the flight occurred. The trial court determined the evidence of flight was probative, and this Court agrees. No explanation was given as to Godbolt’s actions other than his association with Dishmon’s murder.
¶ 12. Where there is evidence of flight and no independent reason for flight, the jury should be allowed to draw an inference of guilt. Jimpson v. State, 532 So.2d 985, 990 (Miss.1988); Mariche v. State, 495 So.2d 507, 508 (Miss.1986). There was no independent explanation given to the trial court for Godbolt’s flight. This contrasts with Fuselier, where the defendant’s flight could have been explained by the independent fact that he was a prison escapee. Fuselier, 702 So.2d at 890 (¶ 5). Because there was a possible independent explanation for the defendant’s flight other than the crime charged, the flight instruction to the jury was inappropriate. Id. Godbolt presented no explanation to the trial court that would have precluded the flight instruction. Therefore, we cannot find the trial court abused its discretion in granting the flight instruction. We find this issue is without merit.
¶ 13. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
IRVING AND GRIFFIS, P. JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY.