MAXWELL, J.,
for the Court:
¶ 1. Madison County sheriffs deputies pulled over Robert Marquez Williams for a traffic violation. During the stop, Williams, who was driving a rental car, was questioned about possessing drugs. When a deputy mentioned using a drug-detection dog to sniff around the car, Williams, who was standing outside of the *88 car, made a dash for the vehicle. Though one of the deputies shot Williams with a taser, Williams jumped back in car, put it in gear, and sped away. A high-speed chase on the interstate ensued, ending up with Williams flipping the car, then fleeing from the abandoned vehicle. Williams was later caught and convicted of felony evasion.
¶ 2. On appeal, Williams argues the initial traffic stop was illegal, and thus the evidence of his subsequent felonious evasion was inadmissible. We disagree and find the traffic stop was justified. But even if it were not, Williams would not have been immunized from criminal liability for a distinct, voluntary crime. We also find the evidence was sufficient to support the evasion conviction, the jury instruction on flight from the abandoned vehicle was proper, and the circuit judge’s rulings on four of Williams’s Batson challenges were not clearly erroneous. We therefore affirm Williams’s conviction for felony evasion and his five-year prison sentence.
Background
¶ 3. On July 22, 2008, Williams was driving east on 1-220 in Madison County, Mississippi, when Madison County sheriffs deputies saw his vehicle cross the “fog line” on the right side of the road. When the deputies pulled Williams over, they discovered he was driving a rental car listed in someone else’s name. According to one of the deputies, Williams appeared extremely nervous. Williams was asked to step out of the vehicle and did. When questioned if he possessed certain illegal drugs in the vehicle, Williams answered “no” to each question. But when asked about cocaine, his demeanor markedly changed, though he denied possessing the drug. After Williams declined a request for consent to search the car, one of the deputies told him he as going to walk his drug-sniffing dog around the car. And when the deputy went to get the dog, Williams jumped back into the rental car. In an effort to stop Williams, one of the deputies shot him with a taser.
¶ 4. After being tased, Williams did not stop. Instead, he jammed the car in gear and sped back onto the interstate, almost running another vehicle off the road. According to the deputies who pursued him, Williams was going over one hundred miles per hour when he veered onto 1-55 and crossed into Hinds County. The deputies halted their high-speed pursuit at the Hinds County line. But minutes later they learned from neighboring law enforcement officers that the rental car had been found flipped over on the next interstate exit. However, Williams did not wait around for law enforcement to arrive. Instead, he abandoned the wrecked car and fled. Williams was apprehended a few days later when he falsely reported to the rental-car company that the car had been stolen.
¶ 5. The State indicted Williams for felony evasion in violation of Mississippi Code Annotated section 97-9-72(2) (Rev.2006).[1] A Madison County jury found him guilty of felony evasion, and he was sentenced to five years’ imprisonment. See Miss.Code Ann. § 97-9-72(2). After his post-trial motion was denied, Williams timely appealed.
*89 Discussion
¶ 6. On appeal, Williams challenges four separate rulings by the trial judge, none of which we find were erroneous.
I. Denial of Motion to Suppress All Evidence
¶ 7. Before trial, Williams moved to suppress all evidence of the felony evasion. At the suppression hearing, he argued the traffic stop — which was the but-for cause of his speeding away from the deputies— violated his Fourth Amendment right against an unreasonable search and seizure. See U.S. Const, amend IV (prohibiting unreasonable searches and seizures). Because of this alleged constitutional violation, he asked that the evidence of what happened after the stop be deemed inadmissible “fruit of the poisonous tree.”
¶ 8. “The ‘fruit of the poisonous tree’ doctrine is an exclusionary rule that makes inadmissible tangible evidence obtained incident to an unlawful search or seizure.” Mosley v. State, 89 So.3d 41, 45 (¶ 13) (Miss.Ct.App.2012) (citations omitted). But this exclusionary rule only applies where the search or seizure was not justified. And here, we find the stop and later mentioning of the drug-detection dog were both lawful.
¶ 9. Law enforcement officers have authority to stop motorists “if the officer has probable cause to believe that the person is committing a traffic offense.” Burnett v. State, 876 So.2d 409, 411 (¶ 6) (Miss.Ct.App.2003) (citing Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). By observing Williams weave out of his lane of traffic and across the fog line, the deputies had reasonable suspicion to justify stopping Williams for a traffic violation. Tran v. State, 963 So.2d 1, 14 (¶ 48) (Miss.Ct.App.2006) (holding crossing the fog line is a reasonable basis for a traffic stop). And having a trained dog sniff the outside of a vehicle during a valid traffic stop is not a Fourth Amendment violation. This drug detection technique is permitted during a brief detention, even if there is no reasonable, articulable suspicion of other criminal activity. Jaramillo v. State, 950 So.2d 1104, 1107 (¶¶ 7-8) (Miss.Ct.App.2007) (citing Illinois v. Caballes, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)).
¶ 10. But even if, as Williams argues, the deputies had lacked reasonable suspicion to pull him over, or exceeded the scope of the traffic stop with the drug dog, we find it would be unreasonable to expand the “fruit of the poisonous tree” doctrine to immunize a defendant from prosecution for a new, distinct crime like Williams’s evasion. Such an expansive view would give the defendant, as one federal appellate court put it, “an intolerable carte blanche to commit further criminal acts” as long as they are sufficiently causally connected to the initial police misconduct. United States v. Bailey, 691 F.2d 1009, 1016-17 (11th Cir.1982).
¶ 11. While Mississippi has not addressed this particular issue, we agree with the Eleventh Circuit that “if the defendant’s response is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime.” Id. In Bailey, federal agents attempted to seize the defendant at an airport, in violation his Fourth Amendment rights. The defendant responded by fleeing on foot, throwing a bag containing illegal drugs and cash as he ran. When an agent caught up with him, the defendant assaulted the officer. The Eleventh Circuit held that, because the defendant’s response to the agents’ illegality was to commit a new, distinct crime — evasion of and assault on an officer — the agents could legally arrest him. Id. The agents were also justified in *90 seizing the drugs and cash as part of a search incident to the arrest for the new crime. Id. The court explained its reasoning:
[W]here the defendant’s response is itself a new, distinct crime, there are strong policy reasons for permitting the police to arrest him for that crime. A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct.
Id. at 1017.
¶ 12. The Ninth Circuit has also refused to recognize “any self-help right [that would] immunize suspicious conduct” by the defendant during an illegal stop. United States v. Garcia, 516 F.2d 318, 320 (9th Cir.1975). In Garcia, the defendants, who were detained at a border stop, feigned compliance with the stop but then sped off. The court held no taint attached to the drugs found as a consequence of the ensuing pursuit by border agents based on the defendants’ new suspicious voluntary activity.
¶ 13. And in United States v. Garcia-Jordan, 860 F.2d 159, 160 (5th Cir.1988), the Fifth Circuit held that it was “unnecessary to address the legality of the stop” because the defendant, even if detained illegally, was “not immunized from prosecution” for the assault on a police officer, which he committed during the detention.
¶ 14. So here, even if Williams had been illegally detained, he would not be immunized from arrest, prosecution, and conviction for felony evasion. He committed this new, distinct, and voluntary crime after he was stopped. Thus, we find the trial judge properly denied Williams’s motion to suppress, as the evidence of the crime of felony evasion was not tainted by any Fourth Amendment violation.
II. Denial of Motion for a Directed Verdict and/or a Judgment of Acquittal Notwithstanding the Jury’s Verdict
¶ 15. After the State presented its case-in-chief, Williams moved for a directed verdict. Williams presented no additional evidence in his defense. After he was found guilty, Williams filed a motion for a judgment of acquittal notwithstanding the jury’s verdict. Both motions challenged the sufficiency of the evidence. And on appeal, Williams reasserts his claim that the evidence was insufficient to support finding him guilty of felony evasion.
¶ 16. This court reviews a sufficiency-of-the-evidence claim by “viewing the evidence in the light most favorable to the prosecution” and asking if “any rational trier of fact could have found the essential elements of [felony evasion] beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 17. Williams was found guilty of violating Mississippi Code Annotated section 97-9-72(2). Under section 97-9-72(1):
The driver of a motor vehicle who is given a visible or audible signal by a law enforcement officer by hand, voice, emergency light or siren directing the driver to bring his motor vehicle to a stop when such signal is given by a law enforcement officer acting in the lawful performance of duty who has a reasonable suspicion to believe that the driver in question has committed a crime, and who willfully fails to obey such direction shall be guilty of a misdemeanor[.]
Miss.Code Ann. § 97-9-72(1) (Rev.2006). And under section 97-9-72(2):
Any person who is guilty of violating subsection (1) of this section by operat *91 ing a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life, shall be guilty of a felonyf.]
¶ 18. Williams argues insufficient evidence existed to convict him of felony evasion. He insists: (1) the deputies lacked reasonable suspicion to believe that he committed a crime; and (2) there was no evidence the deputies signaled him to stop once he pulled back on the interstate.

A. Reasonable Sitspicion Williams Committed Crime

¶ 19. As already discussed, because Williams had crossed a fog line, the deputies had reasonable suspicion to initiate the traffic stop. See Tran, 963 So.2d at 14 (¶ 48). And it was within the reasonable scope of the stop to walk the drug-sniffing dog around the car. Further, though Williams initially complied with the traffic stop, the jury heard evidence that Williams appeared nervous (the deputy could see Williams’s heart pounding in his chest), reacted differently when asked about cocaine versus other contraband, and broke for his car when informed about the drug-sniffing dog. Viewing this evidence in favor of the prosecution, a rational juror could have found beyond a reasonable doubt that the deputies, at the point Williams started to take off, had “a reasonable suspicion to believe that [Williams] ha[d] committed a crime.” Miss.Code Ann. § 97-9-72(1).

B. Signal to Williams to Stop

¶ 20. The jury also heard evidence that, when Williams began running back to the driver’s seat, one of the deputies pursued him, brandished his taser, then shot Williams with it. Yet rather than stopping or keeping his car parked, Williams sped off. The deputies then returned to their vehicle and began chasing Williams at a high rate of speed, only backing off when it became dangerous to continue pursuit.
¶21. Williams argues the signal element of section 97-9-72 was not met because the deputies did not signal him to stop after he sped off. Viewing the evidence in favor of the State, we certainly find shooting a suspect with a taser is akin to a full-sensory “hand” signal to Williams to stop and keep his car parked. And the deputies’ high-speed pursuit of Williams, who reached speeds of over one hundred miles per hour before ultimately flipping his vehicle, tends to prove he had been signaled to stop. So a rational juror could have found Williams was “given a visible or audible signal by a law enforcement officer by hand, voice, emergency light or siren directing the driver to bring his motor vehicle to a stop.” Miss.Code Ann. § 97-9-72(1).
¶ 22. The evidence, viewed in favor of the State, also supported the other elements of felony evasion. The deputies testified Williams almost caused another car to run off the road. And minutes later, the car Williams had been driving at extreme speeds was found flipped over on the side of an interstate exit. From this we find sufficient evidence that Williams’s evasion was felonious because he failed to stop “in such a manner as to indicate a reckless or willful disregard for the safety of persons or property” and “so operate[d] a motor vehicle in a manner manifesting extreme indifference to the value of human life.” Miss.Code Ann. § 97-9-72(2); cf. Betts v. State, 10 So.3d 519, 524 (¶¶ 14-17) (Miss.Ct.App.2009) (holding evidence in that case, when viewed in favor of prosecution, supported conviction of violating section 97-9-72(1) and (2)).
¶ 23. Thus, the trial judge properly denied both Williams’s motion for a directed *92 verdict and his motion for a judgment of acquittal notwithstanding the jury’s verdict.
III. Giving of State’s Jury Instruction on Williams’s Unexplained Flight from the Scene of the Car Wreck
¶ 24. At trial, Williams objected to the State’s proposed jury instruction, S-3, which was given as Instruction 5:
“Flight” is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the Defendant, ROBERT MARQUEZ WILLIAMS, did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt[ ] or innocence of the Defendant!.]
A. Two Requirements from Fuselier
¶ 25. Instruction 5 is a “flight” instruction. And a defendant’s “flight is admissible as evidence of consciousness of guilt.” Fuselier v. State, 702 So.2d 388, 390 (¶ 4) (Miss.1997). There are two principal considerations for determining if a flight instruction is appropriate — “(1) only unexplained flight merits a flight instruction, and (2) flight instructions are to be given only in cases where that circumstance has considerable probative value.” Id.
¶ 26. The flight referenced in Instruction 5 was Williams’s flight from the car he wrecked on 1-55, not his initial fleeing from the traffic stop on 1-220. Williams had objected to evidence that he wrecked and abandoned his car as irrelevant. But the judge found the evidence was relevant to whether Williams was consciously trying to evade law enforcement. The trial judge acknowledged the potential for confusion in having a flight instruction in a felony-evasion case. But he gave the instruction because he found the two paramount considerations of Fuselier had been met.
¶ 27. First, Williams had no explanation for why he abandoned his wrecked vehicle, other than his evasion of law enforcement. So there was no independent reason or basis for his flight. See Jimpson v. State, 532 So.2d 985, 990 (Miss.1988) (upholding flight instructions where there was no independent reason for flight); Mariche v. State, 495 So.2d 507, 508 (Miss.1986). And second, the circumstances of his unexplained flight were highly probative. To find Williams guilty of felony evasion, the jury had to find (1) Williams failed to stop in compliance with a signal from law enforcement, and (2) in failing to stop, he drove recklessly with indifference to human life. After review, we agree that evidence Williams flipped his rental car and then fled the wrecked car before law enforcement arrived was probative of both whether he was purposefully evading pursuing officers and whether, in doing so, he was driving recklessly.

B. Rule J03

¶ 28. Williams also suggests, even if evidence of his abandonment of the car was probative, its probative value was substantially outweighed by the danger of unfair prejudice. See M.R.E. 403. But we are mindful that trial judges are afforded “great discretion” in “determining whether to admit evidence of flight under Rule 403.” Shaw v. State, 915 So.2d 442, 447 (¶ 18) (Miss.2005) (citation omitted). And we hardly find that admitting evidence of Williams’s failure to stop even after he wrecked his car and fled on foot was unfair. This case is distinguishable from *93 Fuselier, where the State offered evidence of the defendant’s flight to prove consciousness of guilt in a murder case, when the defendant’s independent reason for fleeing law enforcement officers was that he was a prison escapee — a highly prejudicial fact. Fuselier, 702 So.2d at 390-91 (¶¶ 3-9). Here, there was no independent reason for fleeing other than Williams’s abandoning his wrecked car to evade law enforcement, and no extraneous prejudicial fact. Because of the probative value of this evidence, we find neither the evidence, nor the related instruction violated Rule 403.

C. Williams’s Flight and Substantive Instruction

¶29. Williams next suggests the instruction allowed the jury to infer guilt based on flight, when “flight” itself was the charged crime. However, this argument is somewhat deceiving because Williams was not charged with — and the jury was not instructed on — the crime of “flight.” Rather, Williams was indicted for “felony evasion.” And based on Instruction 6, to find Williams guilty, the jury had to find beyond a reasonable doubt he committed all essential elements of felony evasion, none of which included the words “flight” or “hiding.”
¶30. While we recognize Williams’s flight after his wreck was a continuation of his initial failure to stop, we disagree that Instruction 5 took away the issue of Williams’s guilt from the jury. Instruction 5 clearly instructed that, before the jury could consider Williams’s flight as evidence of his consciousness of guilt, it first had to find he did indeed hide or flee. And only if the jury found Williams hid or fled must it consider, based on “all the facts[,] whether such flight or hiding was from a conscious sense of guilt.” Still, even then, the jury was told it could “give [its findings] such weight as [it thought].” So the flight instruction did not mandate the jury to convict Williams of evasion. It merely allowed the jury to weigh the evidence of Williams’s flight after the car wreck as it saw fit.
¶ 31. Instruction 5 in no way altered Instruction 6’s requirement that to find Williams guilty, the jury had to find beyond a reasonable doubt that Williams failed to stop after being signaled to do so by law enforcement.
¶ 32. “Jury instructions are within the discretion of the trial court and the settled standard of review is 'abuse of discretion.” Watkins v. State, 101 So.3d 628, 635 (¶ 22) (Miss.2012) (citation omitted). Reading all the instructions together, as we must, “if the jury instructions state the law of the case and create no injustice, then no reversible error will be found.” Id. Reading Instructions 5 and 6 together, we find the trial judge properly instructed the jury on both the law of unexplained flight and the charged crime of felony evasion.
IV. Ruling that State’s Use of Peremptory Strikes of Potential Jurors Was Not Racially Discriminatory
¶ 33. In Batson v. Kentucky, the United States' Supreme Court held that peremptory strikes of potential jury members cannot be exercised in a racially discriminatory way. Batson v. Kentucky, 476 U.S. 79, 82-84, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). During jury selection, Williams, who is African American, challenged the State’s use of four of its peremptory strikes on African American venire members, arguing the State was striking these four potential jurors because of their race.
¶ 34. With the claim of racial discrimination having been raised, the trial judge applied the appropriate three-part inquiry:
First, the party objecting to the peremptory strike of a potential juror must make a prima facie showing that race was the criterion for the strike.
*94 Second, upon such .a showing, the burden shifts to the State to articulate a race-neutral reason for excluding that particular juror.
Finally, after a race-neutral explanation has been offered by the prosecution, the trial court must determine whether the objecting party has met its burden to prove that, there has been purposeful discrimination in the exercise of the peremptory strike, i.e., that the reason given was a pretext for discrimination.
Pitchford v. State, 45 So.3d 216, 224 (¶ 14) (Miss.2010) (citing Flowers v. State, 947 So.2d 910, 917 (¶ 9) (Miss.2007)).
¶ 35. The trial judge found Williams made a prima facie case that race was the reason for the strikes.[2] So the judge then required the State to articulate race-neutral reasons for each strike. The State gave these reasons for the four strikes:
(1) Juror 1 had been arrested by the Madison County Sheriffs Department, the same department responsible for stopping and pursuing Williams. She also had the same last name as a known crime family in Canton.
(2) Juror 2 had a relative that had been arrested and incarcerated for rape. When asked if she could be fair, she responded, “Hard to say.”
(3) Juror 9 had a father serving a life sentence in prison for murder.
(4) Juror 13 expressed that he distrusted law enforcement.
The trial judge determined the State met its burden of articulating race-neutral reasons. And in carrying out the third step, the judge found none of the State’s race-neutral reasons were pretextual.
¶ 36. On appeal, Williams argues the judge failed to apply step three. Williams focuses on Juror 9, whose father is incarcerated, and argues the judge did not compare her to other non-African American venire members who expressed similar situations but were accepted on the panel. But from our review it is apparent the judge did consider whether the State accepted other jurors with family members in jail. And what he found was that, while other venire members mentioned relatives or roommates that had been arrested, no other venire member had a relative that was currently not only in prison — but in prison for a life sentence. Indeed, the judge pointedly asked Williams’s attorney if he knew of “anyone else that has been accepted that has someone that’s actually been convicted and is presently serving time in jail.” And Williams’s counsel admitted no other venire member was closely related to someone “presently in jail.”
¶ 37. Our supreme court has directed this court to “give[] great deference to a trial court’s determinations under Batson because they are based largely on credibility.” Flowers, 947 So.2d at 917 (¶ 8) (citing Berry v. State, 802 So.2d 1033, 1037 (¶ 9) (Miss.2001)). Because of this required deference, we may only overturn a Batson ruling if the record shows it was “clearly erroneous or against the overwhelming weight of the evidence.” Id. (quoting Thorson v. State, 721 So.2d 590, 593 (¶ 4) (Miss.1998)). Because the record does not indicate the judge’s, ruling was clearly erroneous or contrary to the evidence, we find no reversible error.
¶ 38. For these reasons, we affirm Williams’s felony-evasion conviction and sentence of five years’ imprisonment.
¶ 39. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT *95 OF CONVICTION OF FELONY EVASION AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A FINE OF $5000, WITH $4,000 SUSPENDED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ, CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. Williams was specifically charged with: (1) willfully failing to stop driving his motor vehicle in compliance with a visible and audible signal given by a law enforcement officer, who was acting in lawful performance of his duty and who had reasonable suspicion to believe Williams had committed a crime, and (2) in failing to stop, operating his vehicle in a manner indicating a reckless and willful disregard for the safety of persons or property and an extreme indifference to human life.

. Between its second and third peremptory strikes, the State did accept an African American female, Juror 7, for the panel.