SOUTHWICK, P.J.,
for the Court:
¶ 1. Harold and Bobbie Dungan appeal from a Claiborne County Chancery Court decision awarding them $1,950 in pro-rated rents and $2,000 in damages for the failure of Gene Presley to maintain the roads on property Presley leased from the Dun-gans. We find that the chancellor’s decision was not manifestly erroneous and affirm.
FACTS
¶ 2. Gene Presley and Harold and Bobbie Dungan entered into a written lease on August 16, 1988. The lease was apparently drafted by Presley, and granted him the right to hunt, fish, graze, farm and cut hay on the Dungan’s property for a period of ten years. The contract called for Presley to pay the Dungans $5 per acre for these rights. The contract was to terminate on August 16, 1998, at which time Presley would have the right to match any bid for the lease and retain the lease for no less than an additional four years.
¶ 8. A dispute between the parties arose during 1998 over the use of the properties, and Presley filed suit in the Claiborne County Chancery Court to enforce his rights under the lease agreement. The parties entered into an agreed order March 30, 1994, providing that Presley would not disturb any timber recently planted by the Dungans, that Presley would reasonably maintain the existing roads and gates, and would reasonably maintain the fences in the immediate area of the gates, and that the Dungans would have unlimited access to the property for inspection and use, including hunting and fishing.
¶ 4. As the expiration date of the lease approached, the Dungans notified Presley that they would not be renewing the lease. In response, Presley filed suit in the Claiborne County Chancery Court seeking a declaratory judgement that he would be allowed to re-lease the property for an additional four years. The Dungans answered alleging that they were not obligated to re-lease the property and counterclaimed alleging damage and waste to the property.
¶ 5. The suit was set for trial and was first heard by Chancellor Hyde Russ Jenkins. Following extensive testimony about the lease and alleged damage to the property, Chancellor Jenkins recessed the trial with the apparent intent to personally inspect the property in question. However, before this occurred, Chancellor Jenkins was removed from the bench.
¶ 6. The trial was resumed on April 27, 1999, before Chancellor George Ward. Following another day of extensive testimony, the chancellor ruled that there was insufficient evidence to support the Dungan’s claim that Presley damages recently planted timber. In addition, the chancellor found that Presley had reasonably maintained the fences near the gates on the property, but that Presley had not reasonably maintained the roads in accordance with the 1994 agreed order. The chancellor gave Presley the option of repairing the roads or paying the approximated $2000 cost of the repairs.
¶ 7. Addressing the issue of the lease, the chancellor found that there was not a meeting of the minds as to the meaning of the renewal section of the contract. Presley believed that he had a ten-year lease with an option to renew for an additional four years. The Dungans believed that it was a ten-year lease which gave Presley the right to renegotiate a renewal for an *595 additional four years. Recognizing this confusion, the chancellor found as a matter of fact that there was no covenant to renew the lease and that the lease terminated on August 16, 1998. The chancellor awarded the Dungans $1950 in pro-rated rents because Presley had enjoyed the used of the property for approximately nine months past the termination date of the lease. The Dungans appeal.
DISCUSSION
¶ 8. The Dungans appeal the chancellor’s ruling asserting that the trial court erred in allowing certain witnesses to testify as non-disclosed rebuttal witnesses, in allowing an expert withess to testify without timely notice, in not granting sanctions for Presley’s failure to produce discovery, in not granting damages for the loss of timber, in awarding an inadequate damage award as a result of damages to roads on the property, and in pro-rating the rents due instead of treating Presley as a holdover tenant. We find these assignments of error without merit and affirm.

I. Witness testimony

¶ 9. The Dungans assert that the trial court committed reversible error by allowing non-disclosed witnesses to testify as rebuttal witnesses and in allowing an expert witness to testify without timely notice. Specifically, the Dungans complain that the chancellor committed manifest error in allowing Stuart Knight and George Perritt to testify without their appearances being disclosed. The chancellor allowed their testimony as rebuttal witnesses.
¶ 10. The determination of whether evidence is properly admitted as rebuttal evidence is within the trial court’s discretion. Wakefield v. Puckett, 584 So.2d 1266, 1268 (Miss.1991). Thus, this court only reviews such a decision for abuse of discretion.
¶ 11. In general terms, the party bearing the burden should not withhold evidence for rebuttal which properly belonged as part of its case-in-chief. See Parker v. State, 691 So.2d 409, 412 (Miss.1997). Where there is doubt as to whether the evidence is properly case-in-chief or rebuttal evidence, the court should resolve the doubt in favor of reception in rebuttal if:
(1) its reception will not consume so much additional time as to give an undue weight in practical probative force to the evidence so received in rebuttal, and (2) the opposite party would be substantially as well prepared to meet it by surre-buttal as if the testimony had been offered in chief, and (3) the opposite party upon request therefor is given the opportunity to reply by surrebuttal.
Smith v. State, 646 So.2d 588, 543-44 (Miss.1994).
¶ 12. What created the problem here is the somewhat bifurcated nature of this proceeding, necessitated by the change in chancellors, as well as the fact that both parties presented claims requiring resolution. In essence, both parties were acting as plaintiff at some point during the hearing. In the first hearing, Presley presented evidence for his request for declaratory judgment and the Dungans presented part of their defense to that claim. In addition, the Dungans presented evidence on their damage claims. The Dungans continued the presentation of their damage claims in the second hearing. It was then that Presley called both Knight and Perritt to testify to rebut the damage claims of the Dungans.
¶ 13. The Dungans objected to their testimony and were overruled. The Dungans vigorously cross-examined both witnesses. The Dungans requested surrebuttal, but the chancellor determined that any such testimony would be repetitive and unproductive. There is little doubt that this testimony was properly admitted as rebuttal testimony. The issues addressed by Knight and Perritt were not before the court during Presley’s case-in-chief. ‘Whether the testimony evidence is properly offered during the case-in-chief or as *596 rebuttal evidence is not always clear. In gray areas, the trial judge must be given due discretion.... ” Parker, 691 So.2d at 413. Here we find that the chancellor properly allowed the testimony of Knight and Perritt.
¶ 14. The Dungans also assert that the chancellor was manifestly erroneous for allowing expert testimony by Willie Tomlinson without timely notice. This assignment of error is clearly without merit. The chancellor specifically prohibited Tomlinson for offering expert testimony because of the Dungans’s objections. Tomlinson testified as a fact witness who offered testimony in rebuttal to the Dun-gans’s damage claims. Tomlinson had viewed the property in question and testified about his observations.
¶ 15. “The manner of trial decorum ... are matters largely left to the discretion of the trial judge, as he is present, has the opportunity, as well as the duty, to see that the course of the trial is conducted in conformity with traditional notions of fairness and impartiality to the litigants.” New Orleans & Northeastern R.R. Co. v. Weary, 217 So.2d 274, 279 (Miss.1968). Here the chancellor recognized that fairness required Tomlinson to be excluded as an expert. ' He also recognized that Tom-linson had relevant fact testimony about the issues in controversy. Accordingly he allowed his testimony as a fact witness testifying in rebuttal. This was not an abuse of discretion. Additionally, the Dungans concede in their brief that allowing Tomlinson’s testimony was harmless error. The assignments of error are without merit.

II. Discovery violations

¶ 16. The Dungans assert next that the chancellor was manifestly in error and abused his discretion by not imposing sanctions on Presley for failing to respond to a subpoena duces tecum issued to St. John’s Hunting Club. St. John Land Company, Inc., through David McDonald, an officer of the corporation, responded and objected to the subpoena. The Dungans then sought to compel discovery of the requested information.
¶ 17. After a hearing on the motion, the chancellor ordered St. John to disclose the names and addresses of its officers, as well as provide the other requested information. The record indicates that the chancellor’s ruling was complied with by St. John. No request for sanctions was made by the Dungans until appeal. Regardless of the failure of the Dungans to make a timely request for sanctions, there was no discovery violation as St. John explicitly complied with the chancellor’s ruling. This assignment of error is without merit.
III. Damage for timber
¶ 18. The Dungans next assert that the chancellor committed manifest error by not awarding damages for the destruction of trees. The Dungans cite Miss.Code Ann. § 95-5-10 as the basis for their claim. The statute states, in relevant part:
(1) If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($250.00) per acre. The liability for the damages established in this subsection shall be absolute and unconditional and the fact that a person cut down, deadened, destroyed or took away any tree in good faith or by honest mistake shall not be an exception or defense to liability. To establish a right of the owner prima facie to recover under the provisions of this subsection, the owner shall only be required to show that such timber belonged to such owner, and that such timber was cut down, deadened, destroyed or taken away by the defendant, *597 his agents or employees, without the consent of such owner.
Miss.Code Ann. § 95-5-10(1) (Rev.1994).
¶ 19. The chancellor here determined that there was “very little evidence before the court that was substantial enough for the court to have any idea on how many trees are missing and especially how many trees are missing because of Presley or the hunting club.” Additionally, the chancellor found that the claim for damages was not brought within the required time period, and was therefore barred by the relevant statute of limitations. Finally, the chancellor ruled that the evidence wholly failed to establish that Presley damaged any trees.
¶ 20. This Court is to give great deference to the decisions of the chancellor concerning findings of fact and especially to the credibility of witnesses. Collins v. McMurry, 539 So.2d 127, 129 (Miss.1989). If substantial credible evidence supports the chancellor’s decision, it will be affirmed. Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997). This Court must examine the entire record and accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court’s findings of fact. Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983).
¶ 21. In reviewing the chancellor’s decision, we find nothing in the record which would warrant reversal. Although there was testimony which tended to support the Dungans’s claim that trees had been destroyed, there was nothing which indicated when the trees were destroyed, how many or by whom. In all, the Dungans wholly failed to prove their asserted claim. The chancellor did not err in refusing to grant damages. This assignment of error is without merit.

TV. Damages to roads

¶ 22. The Dungans next assert that the chancellor erred in only awarding $2000 in damages for Presley’s failure to properly maintain the roads on the property. The Dungans claim that the damage to the roads was more than the normal wear and tear. The Dungans assert that the roads were destroyed through a combination of abuse and neglect. Presley asserts that he reasonably maintained the roads until directed to stop by the court and that any degradation of the road was through normal wear and tear.
¶ 23. The Dungans presented testimony by two witnesses on the issue of damage to the- roads. The first witness, Charles Curtis, testified that the roads could be graded and made usable for approximately $2000. The second witness was the Dungans’s son, Harold Dungan, Jr., who testified that he estimated it would require 7,666 cubic yards of fill dirt to bring the roads to the state they were in prior to the lease. In total, Harold Dungan, Jr., estimated repair costs at $61,328 to return the roads to their pre-lease condition.
¶ 24. The chancellor determined that the duty to maintain the roads imposed on Presley by the 1994 agreed order only required him to conduct reasonable maintenance. That is, he had to make the roads reasonably passable for normal traffic. In so finding, the chancellor concluded that Presley was only required to grade the roads and make them passable, not build the roadbed with fill dirt. Accordingly, Presley was given the option of repairing the roads himself or paying $2000 in damages, the cost of repairs that one witness estimated at trial.
¶ 25. Applying the same standard as above, we can find no error in the chancellor’s decision. The only witness that claimed the roads could not be repaired by simply grading them was the Dungans’s own son. The damage award here was proper. This assignment of error is without merit.

V. Pro-rated rent

¶ 26. The Dungans final assignment of error asserts that the chancellor erred in pro-rating the rent of the property instead of assessing the full value of the lease because Presley received the Ml *598 benefit of the lease, that is, an additional hunting season. The Dungans’s argument is that Presley is a holdover tenant who received the full benefit of his bargain. Presley argues that the issue was not pled by the Dungans, but does not challenge the decision.
¶27. The Dungans essentially rely on the common law rule which stated that “where, without a new contract, a tenant continues to occupy the property which he has held under an annual lease, he becomes liable as tenant for another year at the same rate and under the same terms.” Tonkel v. Riteman, 163 Miss. 216, 219, 141 So. 344, 344 (1932). This rule, however, was abandoned by the supreme court, which held:
Section 89-7-25 was intended by the legislature to provide the sole action for damages as the result of a tenants holdover. The common law rule as been abrogated once and for all and may no longer be used to impose the renewal of an expired lease.
Mississippi State Dep’t of Public Welfare v. Howie, 449 So.2d 772, 778 (Miss.1984).
¶28. The effect of Howie was to make section 89-7-25 the sole remedy for landlords against holdover tenants. The statute requires the tenant to deliver the premises to the owner once he is notified of the termination of the lease. Failure to quit the premises at the appointed time shall make him liable for double rent which must be sued for by the landlord. See Miss.Code Ann. § 89-7-25 (Rev.1999).
¶ 29. Here the Dungans never pled for the relief allowed -under the statute. At the same time, it is unclear whether Presley was occupying the land unlawfully. At the time the lease ended the issue of the lease renewal was unresolved. It was entirely possible that the chancellor would rule in Presley’s favor and allow the renewal. Because of this unresolved issue, we find that the chancellor did not abuse his discretion in awarding only pro-rated rents to the Dungans.
¶ 30. Presley had occupied the land awaiting the .determination of his rights by the chancellor. A unique set of circumstances postponed the decision of the court which was the fault of neither party. In fact, the chancellor noted in his decision that the court had ordered that the lease remain in effect. Taking this into account, the chancellor found that Presley should not be penalized for maintaining the lease. At the same time, the chancellor could not allow Presley to have enjoyed the benefits of the lease without compensation to the Dungans. Accordingly, he awarded the Dungans nine months rent as compensation for Presley’s occupancy. We find that this is not an abuse of the chancellor’s discretion. This assignment of error is without merit.
¶ 31. THE JUDGMENT OF THE CLAIBORNE COUNTY CHANCERY COURT AWARDING $1950 IN PRORATED RENTS AND $2000 IN DAMAGES FOR FAILURE TO MAINTAIN THE ROADS ON THE PROPERTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.