IRVING, J.,
for the Court.
¶ 1. Jim Kindred appeals from a judgment in favor of the Columbus Country Club, Inc. (Country Club) which was entered by the Circuit Court of Lowndes County pursuant to a jury verdict finding that the Country Club was not liable for the death of his wife who was killed when *721 the car which she and Jim were riding in was struck by a falling tree from the Country Club’s property as they traveled along a stretch of Mississippi. Highway 12 which runs parallel with the edge of property owned by the Country Club.
¶ 2. In this appeal, Kindred alleges that the circuit court erred (1) in refusing to allow him to call a certain witness to testify concerning the Country Club’s prior knowledge of the defective condition of the tree, (2) in denying a new trial because of the Country Club’s failure to accurately answer discovery, thereby causing him prejudice, (3) in denying a new trial as a sanction for the Country Club’s intimidation of a defense witness, and (4) in giving a peremptory instruction on a su-perceding cause.
¶ 3. We find no merit in the issues presented by Kindred; therefore, we affirm the judgment of the circuit court.
FACTS
¶4. On their wedding night, Kindred and his new bride, Diana drove through a storm as they made their way to their honeymoon destination. In route to their destination, they traveled past the Columbus Country Club where a major portion of a tree on the Country Club’s property fell across the Kindred’s car. A limb came through the windshield and injured Diana. She later died from her injuries.
¶ 5. Kindred, claiming that the Country Club was negligent in allowing the tree to remain on its property in a defective condition, filed a wrongful death lawsuit against the Country Club in which he alleged that the Country Club’s negligence was the proximate cause of his wife’s death.
¶ 6. After the usual discovery, the case proceeded to trial which lasted three days. At the conclusion of the trial, special interrogatories were submitted to the jury which found that Diana’s death was not proximately caused by the Country Club. The circuit court entered judgment accordingly, leading to this appeal. Additional facts will be related during our discussion of the issues.
. ANALYSIS AND DISCUSSION OF THE ISSUES

1. The Refusal to Allow the Testimony of James Traywiek

¶ 7. The admission of evidence is within the discretion of the trial court. Clemons v. State, 732 So.2d 883, 887(¶ 18) (Miss.1999) (quoting Peterson v. State, 671 So.2d 647, 655-56 (Miss.1996)). However, that discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will occur only if there has been an abuse of discretion resulting in prejudice to the proponent of the evidence.
¶ 8. After both Kindred and the Country Club had concluded their cases, Kindred sought to call three witnesses in rebuttal, Cathy Bailey, James Traywiek, and Jay Jordan, III. Kindred’s desire to call Jordan was conditioned upon his being allowed first, to call Bailey and Traywiek. He stated to the court that if the court was not going to allow him to call Bailey and Traywiek, then he did not want to call Jordan. Columbus Country Club noted that Jordan was on its list but that it had decided not to call Jordan. It offered no objection to Jordan being called by Kindred. The court refused to allow Bailey and Traywiek to testify, and the testimony of all three witnesses was proffered.
¶ 9. While the court refused to allow the testimony of two witnesses, Kindred has focused primarily on one witness, James Traywiek. Therefore, we will confine the bulk of our discussion to the circumstances surrounding the trial court’s refusal to let *722 this witness testify, although we will briefly discuss the circumstances surrounding the others.
¶ 10. The first witness, Bailey, testified that she first learned from a nightly news report two nights prior to her giving testimony that the trial was taking place. She was a former member of the Columbus Country Club who planted flowers on the grounds of the Country Club. She did not know how Kindred learned that she knew something about the subject tree in question. She came to court because she was responding to a subpoena. She testified that she had asked Jay, the Country Club groundskeeper, why the subject tree was not' cut during a time when other trees were being cut. The basis for her inquiry to Jay was not made clear in the record although she did testify that the tree had “mixed dead and mixed green” leaves on. it, part of the tree was brown and part of it was green. She could not specify the time frame when she talked to Jay about the tree.
¶ 11. Traywick testified that he and his boss, Danny Harrison cut up and removed one large limb which had fallen from the tree in question. He stated that when the large limb fell from the tree, it cracked or damaged two other limbs which he and his boss cut down. He also testified that the tree was hollow and black, “black and yellow.” When asked if he knew whether any plans were made at that time to have the tree cut, he responded, “Just what I was told. My boss went in to tell them it was cleaned up and told them it needed to come down, that it was going to hurt somebody cause it was hollow.” Finally, Tray-wick testified that he had forgotten about his involvement with the tree until he saw a report in the Sunday’s paper that the trial was about to begin. He stated that he came to the courthouse because he thought it was the right thing to do.
¶ 12. In arguing that he should be allowed to present the rebuttal witnesses, Kindred, through his attorney, advised the court that he had no prior knowledge of these witnesses, that witness Traywick read about the trial and just appeared at the courthouse, and that witness Bailey “came up here” after “a friend of hers called her, knowing that she had been upset about this when she was at the Country Club.” Later, Kindred’s counsel informed the court that he had gotten Bailey’s name from an anonymous caller who called his office during the trial. It is noteworthy that Bailey’s testimony did not comport with the representation that she just came to the courthouse or that she had ever shared her concerns about the tree with a friend. As noted earlier, she testified that she did not know how Kindred learned she knew something about the tree in question. Also, she never indicated in her testimony that she even knew about the incident when it occurred, much less that she was upset about it when she was a member of the Country Club. However, in fairness to counsel for Kindred, we point out that Bailey was never asked whether she talked to a friend about the incident when it occurred.
¶ 13. As noted, the trial judge refused to allow the witnesses’s testimony. His basis for denying the testimony was that the witnesses had not been disclosed to the defense prior to trial and were not listed on the pretrial order. Specifically, the trial judge remarked, “[Tjhese names were not disclosed. They’ve not been deposed. They’re not in the pretrial order, and people don’t walk in off the street and testify in Court.”
¶ 14. A review of the docket indicates that the trial of this matter commenced on August 26, 2002. Kindred relied on two witnesses, Tyrone McCoy and Robert Butler, to prove that the Country Club had *723 prior knowledge that the tree was rotten and needed to be taken down. McCoy and Butler were local tree cutters. According to the record, McCoy and Butler testified on August 27. The defense, as Kindred freely admits, decimated Butler’s and McCoy’s credibility. Then on the next day, August 28, according to the docket sheet, Kindred issued a subpoena for Traywick. A subpoena was issued for Bailey on August 29.
¶ 15. Kindred asserts that he should have been allowed to call Traywick because the Country Club failed and refused to disclose during discovery that Traywick had done work on the tree. Kindred further asserts that he could not disclose the identity of the witness because he had no knowledge of the witness until the witness showed up at the courthouse.
¶ 16. We do not believe that under these facts the trial judge abused his discretion in not allowing the witnesses to testify. First, it is only an assumption on Kindred’s part that the witness, Traywick was telling the truth. He may have been, but there is no evidence, other than Tray-wick’s testimony, that Traywick and his boss cut limbs from the tree in question and informed the Country Club that the tree needed to be taken down. It seems to me that the trial judge’s suspicion of Traywick was not without reasonable basis, given the turn of events during the trial and Traywick’s almost magical appearance thereafter. If Traywick was mistaken about cutting the limbs from the tree, the Country Club certainly would not have had any basis for disclosing his identity to Kindred.
¶ 17. Second, even assuming the truth of Traywick’s story about cutting the tree limbs and of how he came to testify during the trial, it is important and dispositive of this issue that Traywick did not appear to have any direct, personal knowledge of the alleged conversation between his boss, Danny Harrison, and whomever Harrison allegedly spoke with about the condition of the tree. His testimony was that he had been told that personnel of the Country Club had been informed of the tree’s condition. -He never testified that he was present when the conversation took place. While he was competent to testify about what he saw, and heard, he was not competent to testify about what his boss told him.
¶ 18. Kindred argues that Traywick’s testimony was rebuttal evidence, and, quoting from Dungan v. Presley, 765 So.2d 592(¶ 10) (Miss.Ct.App.2000), argues that “[wjhere there is doubt as to whether the evidence is properly case-in-chief or rebuttal evidence, the court should resolve the doubt in favor of reception in rebuttal ...” if certain conditions are met. We do not quarrel with this assertion, but here there was no doubt. The testimony which was sought to be offered through Bailey and Traywick was clearly case-in-chief evidence. Traywick was not offered to refute any assertion by the defense, during its case, that neither he nor his boss had cut limbs from the tree or an assertion that neither he nor his boss had informed the Country Club that the tree needed to be taken down. It is rather clear that these witnesses were offered in an attempt to bolster Kindred’s faltering case, not to refute specific testimony given during the defense’s case.

2. The Denial of a New Trial

¶ 19. The denial of a new trial implicates the discretion of the trial court. A “motion [for a new trial] should be granted only when upon a review of the entire record, the trial judge is left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice.” Anchor Coatings *724 v. Marine Industrial Residential Insulation, Inc., 490 So.2d 1210 (Miss.1986). On appeal, reversal will be appropriate only in instances where the trial court has abused its discretion.
¶ 20. Kindred argues that the Country Club failed to disclose Traywick’s identity during discovery. In fact, Kindred contends that the Country Club falsely answered an interrogatory designed to obtain information about persons who had been contracted by it to inspect, trim, and/or cut and remove trees from the Country Club’s property. Kindred argues that this conduct on the part of the Country Club justifies the grant of a new trial.
¶ 21. The problem with Kindred’s argument on this point is that, as previously observed, it assumes the truth of what Traywick said. He may have been telling the truth, but, as we have already discussed, there is no evidence other than his testimony that he and his boss trimmed or cut a tree on the Country Club’s property. We would have a different question had Kindred presented some documentary proof that such incident did in fact occur. The trial judge may have been a little apprehensive about the witness’s story; we do not know. Nevertheless, on these facts, we cannot say that the trial court abused its discretion when it did not grant a new trial.
¶ 22. Kindred also argues that the trial judge erred in not granting a new trial as a sanction for what he terms the intimidation of one of Kindred’s witnesses. The allegation of intimidation centers on questions about a secret indictment that one of the Country Club’s attorneys asked witness Tyrone McCoy about during a recess in the trial just before McCoy testified and on questions asked during cross-examination of McCoy about whether he was being paid to testify. Kindred argues that there was no basis for the latter inquiry. As to the questions regarding the grand jury’s indictment, Kindred asserts that one of the Country Club’s lawyers told McCoy that McCoy might get locked up if he testified. Notwithstanding the warning, McCoy testified anyway; however, he testified that he was afraid. He denied the suggestion that he was being paid to testify. According to Kindred, McCoy was arrested on two old drug charges approximately twenty minutes after giving testimony.
¶ 23. We do not condone the tactics employed by the Country Club’s lawyer. It certainly was improper to attempt to prevent the witness from testifying by suggesting that the witness might be arrested if he did so. Since the witness testified anyway, we fail to see how Kindred was prejudiced. There is no evidence that the witness testified falsely because of the threat. Also, we note that this incident apparently was not brought to the trial judge’s attention at the time the witness testified. For these reasons, we find no merit in this suggestion of error.

S. Jury Instruction on Intervening Cause

¶ 24. Kindred’s final argument is that the trial court erred in granting an instruction which characterized an act of God, the storm, as a superceding intervening cause. Specifically, Kindred argues that the instruction was improper because a superceding act must involve some negligence which supercedes the original negligence and that no act of God can be considered a negligent act. Kindred further argues that the superceding cause must be unforeseeable and that a storm is not unforeseeable.
¶ 25. When reviewing jury instructions, they must be considered as a whole. An appellate court will not reverse on a jury instruction issue if the instruc *725 tions fairly announce the law of the case and create no injustice when read as a whole. Wal-Mart Stores, Inc. v. Johnson, 807 So.2d 382(¶ 20) (Miss.2002).
¶ 26. In addition to giving the instruction about which Kindred complains, the trial court also gave this instruction submitted by Kindred:
The Defendant has raised as one of it’s [sic] defenses the death of Mrs. Kindred was caused by an act of God. I charge you that no one is liable for an injury caused by an act of God, which is an injury due directly and exclusively to natural causes without human intervention and which could not have been prevented by exercise of reasonable care and foresight. However, an act which may be prevented by the exercise of ordinary or reasonable care is not an act of God.
Therefore, I charge you that if the death of Diana (Sissy) Kindred could have been prevented by the exercise of ordinary or reasonable care by the Columbus Country Club, Inc., then this death was not an “act of God.”
¶ 27. We are satisfied that the jury instructions fairly announced the law in this case, resulting in no prejudice or injustice to Kindred. This issue is without merit.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P JJ., MYERS AND GRIFFIS, JJ., CONCUR. ISHEE, J., CONCURS IN RESULT ONLY. CHANDLER AND BARNES, JJ., NOT PARTICIPATING.