CARLTON, J.,
for the Court:
¶1. John Bartholomew. Lowe was convicted in the Jones County Circuit Court of five counts of exploitation of children and sentenced as a habitual offender to life imprisonment on each count. The sentence for count I was ordered to run consecutively to the other life sentences, and the sentences for counts II, III, IV, and V were ordered to run concurrently with each other, all in the custody of the Mississippi Department .of Corrections (MDOC).
¶-2.. On appeal, Lowe argues the following: (1) the trial court erred by denying his request for a computer forensics expert; (2) the trial court erred by denying his request to voir dire the State’s computer forensics expert in the presence of the jury; and (3) the verdict is against the overwhelming weight of the evidence. Finding no error, we affirm the trial court’s judgment.
FACTS
¶ 3. Lowe was indicted on five counts of sexual exploitation of children. Each count alleged that he received, via the internet, images of children under the age of eighteen engaging in sexually explicit conduct in violation of Mississippi Code Annotated section 97-5-33(3) (Supp.2011). Each count was alleged to have occurred on June 6, 2009.
¶4. In 2008, Lowe began a friendship with Marie Taylor. Shortly thereafter, Taylor and two of her daughters, Brittany and Ivy, resided with Lowe for a period of time. At the time of the incident, Brittany was fifteen years old, and Ivy was eight years old. Another of Taylor’s children, Courtney, also lived in Lowe’s home for a short period of time.
¶5. While Taylor was residing with Lbwe, he acquired a broken laptop computer from his daughter and fixed the computer. Lowe, Taylor, Brittany, and Ivy all had access to the computer. Taylor testified she used the computer to listen to music, watch music videos, and play games. She also stated her children used the computer to play games and chat with friends. Taylor testified the youngest child, Ivy, logged into the computer using the name “Minnie," but Taylor was unable to recall the names she or Brittany used to log into the computer. Lowe logged into the computer using the name “Muzicman.” According to Taylor, she never saw Lowe *763 download pornography on the computer, and she never downloaded pornography on the computer. She also stated that Lowe never refused anyone permission to use the computer and never acted like he was trying to hide anything.
¶ 6. Taylor and her daughters eventually moved into the-house next door to Lowe’s residence. They continued to have access to the computer, with Lowe allowing them to borrow the computer at their leisure and take it to and from their house. Taylor testified she often left her door unlocked, thus raising the theory that anyone could have gone into her home and used the computer when it was there. She monitored the content Ivy accessed on the computer but did not monitor Brittany’s use. Taylor also had a party at her residence in June 2009, and everyone at the party had access to the computer because it was used to play karaoke music.
¶7. In July 2009, Taylor learned that the Jones County Sheriffs Department was looking for the computer. She had possession of the computer at that time. Taylor contacted Officer Don Sumrall with the sheriffs department to arrange for-someone to pick up the computer the next day. • Because Taylor would be at work when the officers were scheduled to. pick up the computer, she left it with her neighbor, Deanna Stringer. Officer Sumrall retrieved the computer from Stringer and contacted Tom Thomas to conduct a forensic examination of the computer’s hard drive.
¶ 8. The record reflects that on- June 8, 2010, a motion hearing was held concerning the defense’s motion for a continuance. The defense counsel explained that he needed more time to speak with an expert regarding the forensic computer examination. The defense counsel admitted that he had spoken to Thomas, but he was unsure what questions he needed to ask Thomas regarding computer forensics. The State informed the trial judge that the State had advised Thomas that if any fees were incurred for meeting with and talking to the defense, Thomas could charge those fees to the State.
¶9. Per the request of the defense, a pretrial Daubert[1] hearing was held on January 19, 2011. At the hearing, the State voir dired Thomas regarding his qualifications as an expert in the field of computer forensic examination. The transcript shows that the trial judge inquired whether the defense counsel had any questions for Thomas, and the defense counsel responded, “No, Your Honor, they were covered by [the State].” The trial judge then accepted Thomas as a qualified expert in the field of computer forensic examination. No objection to such ruling by the defense appears in the record.
¶ 10. At the trial, which was held April 11-12, 2011, Thomas testified regarding his examination, -of the computer’s hard drive. The record reflects that during the trial, the, defense counsel objected to Thomas’s testimony, arguing: “Thomas’s testimony has not been offered or accepted by the Court as any: kind of computer expert [sic]. And I haven’t been given an opportunity to., voir dire him about his qualifications or the examination that he may or may not have done.” .The trial judge explained that he ha,d already made rulings during ■ the Daubert hearing regarding Thomas’s status as an expert, and the judge instructed the defense counsel that he would be able to question Thomas on cross-examination. During Thomas’s *764 testimony, five exhibits were introduced containing images from the computer allegedly depicting children engaged in sexual activity. Thomas testified that the images were- downloaded by “Muzicman,” Lowe’s username, on June 6, 2009. Thomas could-only identify one internet connection, a McDonald’s network, from which the images were downloaded. He also testified that someone else could have downloaded the images by logging in under “Muzicman,” and that there are ways someone else could have placed the material on Lowe’s computer.
¶ 11. During the investigation, Officer Sumrall and Thomas went to Lowe’s place of work, parked in the parking lot, and then drove up and down the surrounding streets looking for an internet connection from which Lowe could have downloaded the material. They were able to detect internet connections from multiple sources. However, at no point did they check Lowe’s office, a large storage closet located in the middle of the premises, to determine whether there was an internet connection available at that location;
¶ 12. On June -6, 2009, the day the videos were downloaded, Lowe was at work. He worked for Associated Cleaning Services' from July 2008 to July 2009. Lowe was assigned to a Masonite plant in Laurel, Mississippi- John Claxton, the owner of Associated Cleaning Services, testified that on- June 6, 2009, Lowe clocked in at 6:06 a.m. and clocked out at 12:09 p.m. Claxton also testified that he had no knowledge of Lowe bringing a computer to work and did not know whether Lowe had access to an internet connection while • at work’. Claxton further testified that Lowe had always been a punctual and reliable employee.
¶ 13. However, on July 1, 2009, Lowe left the Masonite plant with unfinished work and without clocking out. He failed to advise Claxton that he was quitting or taking a leave of absence and did not pick up his final paycheck. Nonetheless, Lowe never returned to the plant. Shortly thereafter, the police found Lowe’s abandoned vehicle in a Walmart parking lot in Columbia, Mississippi. Lowe was eventually located and apprehended in California.
¶ 14. On April 12, 2011, the jury returned a verdict of guilty on all five counts of exploitation of children. Lowe was sentenced as a habitual offender to life imprisonment in the custody of the MDOC. Lowe now appeals, arguing: (1) the trial court erred by denying his request for a computer forensics expert; (2) the trial court erred by denying his request to voir dire the State’s computer forensics expert in the presence of the jury; and (3) the verdict is against the overwhelming weight of the evidence.
DISCUSSION
I. Denial of Funds for Defense Expert
¶ 15. In his first issue on appeal, Lowe argues the trial court erred by refusing to provide him a computer forensics expert to assist in the preparation of his defense and to rebut the testimony of the State’s expert, Thomas. He asserts a separate defense expert in the field of computer forensics should have been provided to him because the State’s case “depended almost entirely on Thomas’[s] testimony.” Thus, Lowe claims the trial court’s denial of his request deprived him of a fair opportunity to prepare a defense and violated his right to a fair trial. .
¶ 16. “The standard of review of the trial court’s denial of expert assistance is ... abuse of discretion...” Richardson v. State, 767 So.2d 195, 197 (¶ 7) (Miss.2000) (citing Coleman v. State, 697 So.2d 777, *765 780 (Miss.1997)). Additionally, the Mississippi Supreme Court has held that:
This Court weighs on a case-by-ease basis whether the denial of expert assistance for an accused is prejudicial to the assurance of a fair trial and will grant relief only where the accused demonstrates that - the trial court’s abusé, of discretion is so egregious as to deny him due process and where his ¡trial -was thereby rendered fundamentally unfair.
King v. State, 960 So.2d 413, 421 (¶8) (Miss.2007) (citing Grayson v. State, 806 So.2d 241, 254 (¶ 36) (Miss.2001)).
¶ 17. Lowe cites Ake v. Oklahoma; 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), as support for his argument that an expert should have been provided to-him. In Ake, the United State Supreme Court addressed the question of “whether, and under what conditions, the participation of a psychiatrist is important enough tp [the] preparation of a defense to require the State to provide, an indigent defendant with access to competent psychiatric assistance in preparing the defense.” Id., at 77, 105 S.Ct. 1087 The Supreme Court held that where the defendant’s sanity at the time of the offense is a significant factor at trial, the State should provide the defendant with access to a psychiatrist. Id. at 83, 105 S.Ct. 1087.
¶ 18. In Fisher v. City of Eupora, 587 So.2d 878, 883 (Miss.1991), the Mississippi Supreme Court addressed the issue of when a defense expert should be provided. The supreme court stated: “[T]his Court has not interpreted Ake to mean that an expert must be supplied any time an indigent defendant requests one.” Id. The supreme court further addressed the issue of requests for independent expert assistance in the direct appeal of King, 960 So.2d at 420-424 (¶¶ 6-15).[2] The court in King provided that a fundamental question to be answered is whether the defendant has shown a “substantial need” for expert assistance. Id. at 422 (¶ 10).[3] The supreme court further provided that upon a showing of substantial need, expert assistance should be granted. Id. (citation omitted). The King court explained that “ ‘undeveloped assertions of helpfulness to the defense are insufficient to show that need.’ ” Id. (quotation-omitted).
; ¶ 19.' In applying precedent to the present case, the record shows that the defense was provided access to interview and question the State’s computer expert. The record reflects that upon inquiry by the trial judge, the defense counsel admitted that he had met with the State’s expert. Defense counsel failed to provide the trial court with any issue, element, or testimony needed by' the defense from the expert, instead telling the court that he did not know what questions to ask the expert. During the hearing on the request for an expert, the defense failed to articulate an issue, an element, or any desired testimony requiring independent expert assistance. The written motion of the defense similarly identifies no key issue, element, or» desired testimony for which independent expert assistance was substantially needed by the defense.
¶20. To review the sufficiency of the defendant’s expert, we must turn to a re *766 view of the record. In this case, the record reflects that during the motion hearing on the defense request for funds for ind'e-■pendent expert assistance, the defense proffered only undeveloped general assertions to the trial judge as-the basis for the request. • As -acknowledged, the Mississippi Supreme-Court has established that undeveloped assertions fail to provide a sufficient basis-to support a request for funds for an independent expert. See King, 960 So.2d at 422 (¶ 10) (citation omitted). We therefore find no abuse of discretion here in the trial court’s denial of such request based upon the proffer and motion of the defense. The record shows that no factual basis or articulated need was-proffered in support, of Lowe’s request. Thus, Lowe failed to show a substantial need to obtain funds for his request and failed to show the denial of such funds prejudiced his ability to , present a defense. King v. State, 23 So.3d 1067, 1071-72 (¶¶ 7-8) (Miss.2010).
II. Voir Dire of State’s Expert
¶21. In his second issue on appeal, Lowe argues the trial -court erred by- refusing to permit defense counsel to voir dire the State’s expert witness, Thomas, in the presence of the jury. Prior to trial, a Dmbert hearing was held where the State thoroughly questioned • Thomas regarding his age, qualifications, training, and experience' in the forensic examination of computers. The record shows that defense counsel declined to ask any'questions at the hearing, explaining that all of his questions for Thomas were covered in. the State’s voir dire. Thereafter, the trial judge accepted Thomas as a computer forensics expert, and the defense failed to object tothis ruling. • - -
¶22. At trial, the State conducted a voir dire of Thomas in the presence of the jury and then began questioning him regarding the facts of the case. At that point, defense counsel objected,- claiming that the court deprived the defense of the opportunity- to voir -dire Thomas in the presence of the jury about his expert qualifications or examination of the computer. The trial- court overruled the objection and explained that the defense, had an opportunity-to > ask. Thomas questions on cross-examination.
¶28. We review the trial court’s admission or exclusion of testimony under an abuse-of discretion standard. Int'l Paper Co. v. Townsend, 961 So.2d 741, 756 (¶ 31) (Miss.Ct.App.2007) (citations omitted). “The admission of expert testimony is left to the sound discretion of the trial judge.- Unless -¡we conclude'that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, that decision will stand.” Id.
¶ 24. With respect to accepting a witness as an expert, this Court has stated: “The proper procedure and policy when an expert witness is offered is for the [trial] coürt to permit qualification by the party offering the expert witness, and then to permit voir dire by the opposite party before ruling on the competency of the witness.” McBeath v. State, 739 So.2d 451, 453 (¶8) (Miss.Ct.App.1999) (quoting McNeal v. State, 617 So.2d 999, 1008 n. 2 (Miss.1993)). However, “[t]he failure to follow this procedure does not per se constitute reversible error.” Id. Jurisprudence recognizes that “voir dire cross-examination of a witness unquestionably qualified to give expert testimony is unnecessary when such cross-examination would add nothing to the trial.” Id. at 454 (¶ 9). The record in this case shows that after .the trial court accepted Thomas as an expert during a hearing outside of the presence of the jury, -the trial court still provided the defense the opportunity to cross-examine Thomas during the course of trial *767 and in the presence of the jury, The record also shows that the trial court placed no constraints on the defense’s cross-examination, The trial court possesses the authority to control the order of the proceedings.[4] See Dungan v. Presley, 765 So.2d 592, 596 (¶15) (Miss.Ct.App.2000).
¶25. Lowe cites International Paper Co. as support for his proposition that “[flailing to allow the defense to properly examine an expert’s qualifications in the jury’s presence amounts to an abuse of discretion by the trial judge, and is reversible error.” However, his analysis misinterprets the holding of International Paper Co. Our analysis there centered around the trial judge’s role as a gatekeeper for-determining the qualifications of an expert. Int’l Paper Co., 961 So.2d at 760 (¶ 43). In International Paper Co., the trial court refused to allow defense counsel to conduct a voir dire of the proposed expert. Id. at 759 (¶ 41). In finding that the trial court abused its discretion, this Court reasonéd: “The trial court’s failure to allow more extensive voir dire of Johnson as to his qualifications made it impossible for the court to determine whether [he] was truly qualified in his purported field.” Id. at 760 (¶ 43). Thus, the issue in that case concerned whether the trial judge possessed sufficient '’information to properly determine if the expert was qualified. However, the issue raised in the instant case addresses whether defense counsel should have been permitted to conduct voir dire in the presence of the jury before the trial court allowed, the State to elicit: testimony at trial.
¶ 26, As stated, a hearing was held outside of presence of the jury to determine’whether Thomas possessed qualifications sufficient to render him an expert in the field of computer forensics. The gate-keeping decision as to whether a proffered witness qualifies as an expert witness belongs to the trial judge, not the jury. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589-90, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); M.R.E. 702.
¶ 27,. At the pretrial Dcmbert hearing, the defense had an opportunity to voir dire and examine the qualifications of the State’s expert outside of the presence of the jury. However, as acknowledged, at that hearing, the defense declined to ask any questions and voiced, no objection to. the trial judge’s ruling that Thomas possessed sufficient qualifications.[5] The record reflects that at trial, the defense counsel made a contemporaneous objection to the State’s presentation of Thomas’s qualifications as an expert The trial court overruled the objection, and allowed the defense counsel the opportunity to cross-examine Thomas during the trial. The trial court therefore provided the defense with the opportunity to attack Thomas’s qualifications before the jury, without constraint by the trial judge, regarding Thomas’s expertise in the field of computer forensics.
¶28. Following the Daubert hearing, the trial judge concluded that Thomas pos *768 sessed sufficient qualifications to testify as an expert in the field of computer forensics. The record contains substantial evidence of Thomas’s qualifications, and the defense offered no voir dire examination or objection as to Thomas’s expert qualifications at the pretrial Daubert hearing. Thus, the trial court did not abuse its discretion by finding Thomas competent to testify. Furthermore, although the trial court did not allow counsel for Lowe to voir dire Thomas in the presence of the jury before the State elicited testimony, we find that the defense counsel had the opportunity to question Thomas about his testing process and qualifications during cross-examination. Accordingly, we find this issue is without merit.
III. Weight of the Evidence
¶29. When reviewing a challenge to the weight of the evidence, this Court “will only disturb a verdict when" it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (citation omitted). When reviewing a claim that the evidence was against the overwhelming weight of the evidence, we will review the evidence in the light most favorable to the verdict. Id.
¶ 30. In the instant case, the jury’s verdict did not sanction an “unconscionable injustice,” and the State provided ample evidence to support a conviction. The evidence at trial established that Lowe was the owner of the computer and logged in using the name “Muzicman.” The jury heard the testimony of Thomas, the State’s computer forensics expert, who found that the images allegedly depicting children engaged in sexual activity were downloaded by an individual using the name “Muzic-man.” The record reflects no evidence to establish that anyone other than Lowe logged in using that name. The record also shows that Lowe was at work on the day the material was downloaded, and there was evidence that multiple internet connections were available in areas surrounding his place of employment. Thus, he possessed the apparent ability and opportunity to download the material while at work. Finally, testimony presented at trial revealed that once the sheriffs de-. partment began investigating the images on Lowe’s computer, Lowe left his job without completing his work and without clocking out; Lowe abandoned his car, and then he fled the state. See Fuselier v. State, 702 So.2d 388, 390 (¶ 4) (Miss.1997) (holding that “flight is admissible as evidence of consciousness of guilt”). All of these facts support the jury’s verdict. See Bush, 895 So.2d at 844 (¶ 18).
¶ 31. The record reflects substantial credible evidence supporting the jury’s determination that Lowe possessed the opportunity, place, and ability to download the material. The record also shows evidence of Lowe’s behavior upon learning of the investigation by the sheriffs department; namely, Lowe fled the state. Additionally, &e jury heard testimony supporting the defense’s argument that someone other than Lowe downloaded the material from Lowe’s personal computer. Specifically, the defense argued that the computer was not in Lowe’s possession at the time it was recovered; the owner of the company where Lowe worked testified he had never seen Lowe with a computer at work; and the State’s own expert testified that someone other than Lowe could have downloaded the material. However, “[w]hen considering whether a jury verdict [is] against the overwhelming weight of the evidence, we’ show great deference to the jury verdict by resolving all conflicts in the evidence and every permissible inference *769 from the evidence in the [State’s] favor.’ ” Nunnally v. R.J. Reynolds Tobacco Co., 869 So.2d 373, 378 (¶ 9) (Miss.2004) (quoting Venton v. Beckham, 846 So.2d 676, 684 (¶ 27) (Miss.2003)). Thus, although some evidence favors Lowe’s claim of innocence, the jury nonetheless found Lowe guilty; and that verdict does not sanction an “unconscionable injustice.” Accordingly, we find this issue is without merit.
¶ 32. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF FIVE COUNTS OF EXPLOITATION OF A CHILD AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IMPRISONMENT ON EACH COUNT, WITH THE SENTENCE IN COUNT I TO RUN CONSECUTIVELY TO THE SENTENCES IN ALL OTHER COUNTS, AND THE SENTENCES IN COUNTS II, III, IV, AND V TO RUN CONCURRENTLY WITH EACH OTHER, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
LEE, C.J., IRVING, P.J., BARNES, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. ISHEE, J., DISSENTS ■ WITH SEPARATE WRITTEN OPINION, JOINED, BY GRIFFIS, P.J., AND RUSSELL, J.

. The supreme court subsequently denied King’s motion for leave to file' petition for post-conviction’relief wherein the court again noted that King failed to show "substantial need” for independent expert assistance. The court also noted that King failed to show prejudice by the denial of funds;

. The King court noted the United States Supreme Court’s guidelines for determining whether an indigent defendant is entitled to funds to retain an expert. King, 960 So.2d at 420-21 (¶ 7) (citing Ake, 470 U.S. at 77, 105 S.Ct. 1087).

. M.R.E. 611(a) (allows the court to "exerciée reasonable control over the mode and order of interrogating witnesses and presenting evi: dence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment").

. See Hyundai Motor Am. v. Applewhite, 53 So.3d 749, 755 (11.17),(Miss.2011) ("While the trial judge has discretion with regard to when and how to decide whether an expert’s testimony is sufficiently reliable to be heard by a jury, this does not eliminate the requirement that the party opposing the evidence make a timely objection to its being admitted into evidence.").