# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00214-COA

**JOHN BARTHOLOMEW LOWE A/K/A JOHN B. LOWE A/K/A JOHN LOWE**  APPELLANT

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/2015 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/27/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1. A jury in the Jones County Circuit Court, Second Judicial District, convicted John Bartholomew Lowe of five counts of exploitation of a child for possession of child pornography. The court sentenced Lowe—who had been previously convicted of exploitation of a child and voyeurism—as a habitual offender to five consecutive terms of life imprisonment in the Mississippi Department of Corrections (MDOC).[1] Lowe now

---

[1] The court also ordered Lowe to pay a fine of $100,000 for each count, totaling $500,000.

appeals, asserting the following issues: (1) whether the jury was properly instructed on circumstantial evidence; (2) whether his trial counsel was ineffective regarding jury instructions on constructive possession and circumstantial evidence; (3) whether the evidence was sufficient for his convictions or whether his convictions were contrary to the weight of the evidence; (4) whether the court erred in allowing introduction of his prior conviction for exploitation of a child; and (5) whether the court committed reversible error by allowing the State to introduce evidence of flight and in giving a jury instruction on flight. Additionally, in a supplemental brief filed pro se, Lowe asserts the following issues: (1) whether the court erred in denying his motion to suppress the evidence obtained from a laptop; (2) whether the court erred in denying his pro se "Motion in Limine to Exclude Evidence"; (3) whether the court erred in denying his pro se "Motion to Request A *Franks v. Delaware* Hearing"; (4) whether the court erred in denying his motion to suppress the search warrant; (5) whether the court erred in denying his pro se "Motion for Writ of Habeas Corpus Preconviction"; (6) whether the court erred in denying his pro se "Motion for Relief from Judgment or Order"; (7) whether the court constructively amended his indictment when it omitted the words "from the internet" from the jury instructions; (8) whether the court erred in denying his motion to dismiss based on the testimony of the State's expert witness; and (9) whether the court erred in allowing the jury to view the child pornography retrieved from the laptop. Finding no error, we affirm.

FACTS

2

¶2.     Lowe met Marie Taylor in July 2008, and the two began dating. At some point, Taylor began living with Lowe in his trailer in Jones County. Taylor, along with her two daughters—who were about eight and fifteen years old at the time—eventually moved into the trailer directly next door to Lowe's, where they were living during the events giving rise to this case. Despite the move, Taylor and Lowe continued their romantic relationship.[2]

¶3.     Taylor testified at trial that, at some point while they were dating, Lowe acquired a broken Hewlett Packard laptop computer from his daughter. Lowe repaired the laptop and began using it. He set up two different user accounts on the laptop: "Muzicman" and "Minnie."[3] Lowe allowed Taylor and her daughters to use the laptop but instructed them to only access the "Minnie" account, which was not password-protected. Lowe told them not to use the "Muzicman" account, which was protected by a password that neither Taylor nor her daughters knew. Both Taylor and her oldest daughter testified that, although Lowe allowed them to use the laptop, they understood that it ultimately belonged to him. Taylor testified that she had never seen Lowe download child pornography. She also testified that she had never seen Lowe take his laptop with him to work. In contrast, Taylor's daughter testified that she had previously witnessed Lowe take his laptop with him when he left for

---

[2] At the time of trial, Marie had married, and her surname was Jones, rather than Taylor. For clarity, however, we refer to her as Marie Taylor, as that was her name at the time when the events occurred.

[3] The record is unclear whether the second account was actually named "Minnie" or "Mimi"; at trial the account was referred to by both names. However, for consistency, we use "Minnie," as it is the name used most often to refer to the second account.

work.

¶4.   On June 30, 2009, Investigator Don Sumrall with the Jones County Sheriff's Department received reports that Lowe had inappropriately touched several children. The following day, Investigator Sumrall conducted interviews with those children. One child—a nine or ten-year-old girl identified at trial as C.S.—told Investigator Sumrall that she was playing with some other children near Lowe's trailer on one occasion, and she entered the trailer to find Lowe sitting in the living room.[4]  Lowe got up, went to his bedroom and retrieved his laptop, and brought it back to the living room. Lowe turned on the laptop and showed C.S. "[a] movie with naked people in it." When Investigator Sumrall asked C.S. whether the "naked people" in the movie were adults or children, C.S. said that she did not know. C.S. then became visibly embarrassed and ran out of the interview room.

¶5.   Subsequently, Investigator Sumrall ran a criminal history check on Lowe and discovered that he had previously pleaded guilty to both exploitation of a minor and voyeurism.[5]  According to the probation order, Lowe was sentenced to serve a term of fifteen years for exploitation of a minor. Nine of those years were to be served in the custody of MDOC, with six years suspended and five years of post-release supervision.[6]  As of June 30,

_____

[4] The record does not inform us why C.S. entered Lowe's trailer.

[5] The record does not include documents regarding Lowe's conviction for voyeurism; however, during Lowe's sentencing hearing, the court remarked that the two convictions were for separate incidents that took place at separate times.

[6] The record contains conflicting information regarding whether Lowe was sentenced to serve five or six years on supervised probation. However, this issue is moot, as neither

4

2009, Lowe had been out of prison for less than a year and was on probation.

¶6.     On July 1, 2009, Investigator Sumrall went to Lowe's trailer, but Lowe was nowhere to be found. Investigator Sumrall informed Taylor that he was looking for Lowe. Taylor admitted at trial that, immediately after Investigator Sumrall left, she drove to Masonite—where Lowe was working as a janitor at the time—and left a note on his truck to warn him that the police were looking for him. Lowe failed to show up at work the next day and never picked up his final paycheck. Shortly thereafter, authorities discovered Lowe's truck in a Wal-Mart parking lot in Columbia, Mississippi. MDOC classified Lowe as an escaped fugitive and notified the United States Marshall Service of his disappearance.

¶7.     Investigator Sumrall obtained a search warrant of Lowe's trailer to retrieve his laptop. Officials conducted a search on July 2, 2009, but were unable to recover the laptop. Later that evening, Investigator Sumrall received a phone call from Taylor, during which she told him that she had the laptop in her possession. When Investigator Sumrall asked Taylor to turn the laptop over to him, Taylor insisted that she had to go to bed because she had to go to work early the next morning; however, she told Investigator Sumrall that she would leave the laptop with a neighbor, Deanna Stringer, for him to obtain the following morning.

¶8.     The next morning, Investigator Sumrall retrieved the laptop from Stringer. He noted that the laptop's power cord "was barely hanging by a thread" and "looked like it had been

---

party raises an argument regarding it, and as Lowe was charged in Jones County within only one year of being released from MDOC custody.

5

torn." Both Taylor and Stringer later testified at trial that they were unable to power-on the laptop before turning it over to Investigator Sumrall.

¶9.     Investigator Sumrall maintained that he did not inspect the laptop at the time that he retrieved it from Stringer; rather, he obtained an additional search warrant on July 9, 2009, for the express purpose of inspecting the laptop's hard drive. Investigator Sumrall signed the affidavit accompanying the search warrant. He then turned the laptop over to Tom Thomas, a certified forensic examiner, who conducted the actual search of the laptop's contents. Under the "Muzicman" account, Thomas discovered five videos depicting child pornography, some of which had been downloaded on June 6, 2009. Thomas found no evidence of child pornography under the "Minnie" account.

¶10.    John Claxton, Lowe's employer at Masonite, testified that, on June 6, 2009, Lowe clocked in to work at 6:06 a.m. and clocked out at 12:09 p.m. Claxton testified that Lowe was an "above average" employee. While Claxton maintained that he had never witnessed Lowe use Lowe's personal laptop at work, he admitted that there were times when Lowe was unsupervised while working. Claxton further testified that Lowe was unsupervised while at Masonite on June 6, 2009. At some point before trial, Thomas and Investigator Sumrall visited Masonite and discovered that they were able to pick up several wifi access points from the parking lot that were not password-protected and were accessible by the public.

¶11.    The United States Marshall Service located Lowe on September 1, 2009, in a motel room in San Diego, California. He was brought back to Mississippi, and was charged with

6

violating the conditions of his probation for leaving the state, among other reasons.[7]  On

December 8, 2009, a Jones County grand jury indicted Lowe on five counts of exploitation

of a child under Mississippi Code Annotated section 97-5-33(3) (Rev. 2014)[8] for possession

of child pornography, as a habitual offender under Mississippi Code Annotated section 99-

19-81 (Rev. 2015).  Lowe was initially tried on April 11, 2011, and a jury found him guilty

of all five counts.  Lowe was sentenced to five terms of life imprisonment in MDOC custody.

Lowe appealed, arguing that the trial court erred by denying him the funds he requested to

hire an expert witness and by denying his request to voir dire the State's expert in front of

the jury—and arguing that the verdict was against the overwhelming weight of the evidence.

This Court affirmed Lowe's conviction.  *Lowe v. State*, 178 So. 3d 760, 766 (¶20) (Miss. Ct.

App. 2012).  The Mississippi Supreme Court granted certiorari and reversed the conviction,

holding that Lowe was denied due process by the trial court's denial of funds to hire an

expert witness.  *Lowe v. State*, 127 So. 3d 178, 184 (¶26) (Miss. 2013).  The case was

remanded and set for another trial.  It is this second trial that is currently before us on appeal

and is the only trial that we reference throughout the remainder of this opinion.

---

[7] Specifically, Lowe was charged with failing to: (1) "commit no offense," as he was charged with possession of child pornography; (2) "report to [his] probation officer as directed," as he did not report during the months of July, August, and September; (3) "permit home visits," as he was not home when officers visited; (4) "remain within the state of [Mississippi]," as he was found in California; (4) "pay fine and fees," as he did not pay his supervision fees for the month of July, August, and September; and (5) "register as a sex offender," as he did not keep his registration current.

[8] A portion of section 97-5-33 was amended in 2013; however, neither subsection (3) nor subsection (6) of the statute, both of which we discuss in this opinion, was altered.

¶12. Lowe filed a pretrial motion to suppress the evidence obtained from the laptop on the basis that the July 9, 2009 search warrant and accompanying affidavit were overly broad and that the State had insufficient probable cause to conduct its search. At a hearing conducted on the motion, Lowe argued that neither the search warrant nor the affidavit specifically mentioned child pornography; rather, "the affidavit relie[d] wholly on allegations of child fondling and pictures and videos of naked people," which did not necessarily amount to child pornography. Lowe contended that the affidavit erroneously referenced subsection (6) of 97-5-33—which concerns the use of a computer to entice a child into engaging in sexually explicit conduct—rather than subsection (3) of 97-5-33—which concerns child pornography and is the subsection under which Lowe was actually indicted. Lowe further maintained that there was insufficient evidence to suggest that Lowe showed C.S. child pornography and that what C.S. saw could have been an instance of nudity that one might see on an R-rated movie. Additionally, Lowe argued that the laptop was not found in Lowe's possession or on his property, that the laptop was bought by someone else, and that more than one person had control and dominion over the laptop prior to the issuance of the search warrant. In response, the State argued that the search warrant was not even necessary due to Lowe's status as a probationer,[9] which limited his right to privacy under the Fourth Amendment. Further, the State maintained that while the search warrant may have been executed for the purpose of

---

[9] We note that there was confusion at the motion hearing as to whether Lowe was technically a probationer or a parolee; however, the probation order included in the record provides that Lowe was, in fact, a probationer.

8

discovering sexually explicit material meant to entice a child, the search happened to reveal possession of child pornography and that such evidence was admissible.

¶13. At the conclusion of the hearing, the trial court denied Lowe's motion to suppress on the basis that sufficient probable cause existed to warrant the search under a totality of the circumstances, particularly due to the fact that C.S. told Investigator Sumrall that Lowe had actually left the room to get his laptop, brought it back, and shown her a video of nude persons. Additionally, the court found that the search did not exceed the scope of the search warrant because it "was for the search of the contents of the computer and . . . during the search, the search revealed evidence of a crime, albeit a slightly different crime than the crime described in the subsection mentioned in the search warrant."[10]

¶14. Lowe's trial was conducted over the course of two days. During the cross-examination of Stringer, Lowe's counsel asked whether her stepson had ever visited either Lowe's or Marie's trailer. He then asked whether Stringer was aware that her stepson was currently serving time for child pornography. The State immediately objected, and the jury was sent out. The State informed the trial judge that Stringer's stepson had been indicted, but not yet convicted, for possession of child pornography. The State argued that, by

---

[10] The court went on to note that, even if the search warrant was invalid, the good-faith exception set forth by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 926 (1984)—which provided that "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause"—would apply, and the evidence would be admissible.

bringing up Stringer's stepson's indictment, they had poisoned the jury pool by suggesting that he had had access to Lowe's laptop and may have committed the crimes for which Lowe was charged. The State maintained that Lowe had therefore opened the door to allow evidence of his prior conviction of possession of child pornography. Lowe's counsel, in response, argued that "bringing out the prior bad acts of a third party is far different from bringing [out] prior bad acts of a defendant."

¶15. After hearing both arguments, the court concluded that the purpose in bringing up Stringer's stepson's indictment was "to plant in the jury's mind that someone else, a person of a different identity, downloaded or received [the] pornographic images on the computer." The court consequently ruled that the door had been opened for the use of Lowe's prior conviction "for the purpose of proving identity and motive." The jury was sent back in, and Stringer's testimony continued. On redirect examination, the State introduced evidence of Lowe's prior conviction for child pornography by asking Stringer if she was aware of the conviction. The trial judge gave a limiting instruction to the jury, explaining that evidence of Lowe's previous conviction was to be considered only for purposes of identity or motive.

¶16. At the conclusion of trial, Lowe was convicted on all five counts. The trial judge sentenced Lowe to life imprisonment in MDOC custody for each count—due to his status as a habitual offender for having been convicted of two separate felonies—with the five life sentences to run consecutively. Lowe filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the court denied. Lowe filed a notice of

appeal. His counsel filed a brief, and we granted leave for Lowe to file a pro se supplemental brief, which he filed thereafter.

## DISCUSSION

### A. Issues Presented by Lowe's Counsel

#### 1. Jury Instructions

¶17. Lowe makes a number of arguments[11] concerning the jury instructions that were given, culminating in his contention that the jury was not properly instructed as to the definition of circumstantial evidence, or as to the burden of proof required in a case based wholly on circumstantial evidence. In response, the State argues that the existence of direct evidence in this matter precludes Lowe's entitlement to a circumstantial-evidence instruction.

¶18. "Jury instructions are reviewed under an abuse-of-discretion standard." *Burgess v. State*, 178 So. 3d 1266, 1272 (¶14) (Miss. 2015) (citation omitted). "Where there is direct evidence of a crime, the circumstantial[-]evidence instruction need not be given." *Foley v. State*, 914 So. 2d 677, 686 (¶15) (Miss. 2005). "Direct evidence has been held to include evidence such as eyewitness testimony, the defendant's confession to the offense charged, or the defendant's admission as to an important element thereof." *Argo v. State*, 13 So. 3d

---

[11] Specifically, Lowe argues that instructions S-1 through S-5 were improperly granted because they did not require application of the circumstantial-evidence burden of proof; that D-24 through D-28 were improperly denied by the court; that D-21 was improperly denied for containing surplus case citations, and Lowe was not given an opportunity to correct; and that D-4A was erroneous because it contained the word "if," thereby improperly rendering the jury's application of the circumstantial-evidence instruction conditional.

11

849, 852 (¶9) (Miss. Ct. App. 2009). However, "there are certainly more types of direct evidence than eyewitness testimony or confessions." *Foley*, 914 So. 2d at 686 (¶15). "Constructive possession may be established by direct evidence or circumstantial evidence." *Keys v. State*, 478 So. 2d 266, 268 (Miss. 1985). "An item is within one's constructive possession when it is subject to his dominion or control." *Id*.

¶19.    As previously stated, Investigator Sumrall commenced his investigation of Lowe due, in part, to testimony by C.S. that Lowe had shown her a video depicting naked persons on his laptop. While this fact alone may not amount to direct evidence of possession of child pornography, we also note that five videos depicting child pornography were recovered from Lowe's laptop. At trial, both Taylor and her oldest daughter testified that Lowe was the owner of the laptop and that he accessed it using the "Muzicman" account. Taylor and her daughter also testified that "Muzicman" was password-protected and that Lowe had instructed them not to use that account. Taylor's daughter testified that she had witnessed Lowe take his laptop to work. Claxton testified that, on the day some of the videos were purportedly downloaded, Lowe had clocked in to work and was unsupervised. Finally, Thomas testified that several wifi access points were accessible by the public from the Masonite parking lot. We find that all of this evidence, combined, serves as direct evidence to show that child pornography was recovered from the laptop, that Lowe was in dominion or control over the laptop, and that Lowe possessed the child pornography, constructively, at the very least. As such, we find that the trial court did not abuse its discretion in refusing

12

the circumstantial-evidence instruction.

### 2. Ineffective Assistance of Counsel

¶20. Lowe argues that he received constitutionally ineffective assistance of counsel at trial because his counsel failed to submit a constructive-possession instruction, because his counsel objected to jury instruction S-6 and acquiesced to its withdrawal, and because his counsel presented an instruction that inadequately instructed the jury on the burden of proof required for circumstantial evidence. In response, the State argues that Lowe's counsel was not ineffective, and that any decisions his counsel made were strategic.

¶21. This Court has held that:

> When a party raises an ineffective[-]assistance[-]of[-]counsel claim on direct appeal, the proper resolution is to deny relief without prejudice to the defendant's right to assert the same claim in a post-conviction[-]relief proceeding. We should reach the merits on an [ineffective-assistance-of-counsel] issue on direct appeal only if (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge. If we do not consider the issue due to the state of the record, assuming we affirm the conviction, the defendant may raise his ineffective[-]assistance[-]of[-]counsel claim in a post-conviction[-]relief proceeding.

*Argo*, 13 So. 3d at 851 (¶6) (quoting *Graves v. State*, 914 So. 2d 788, 798 (¶35) (Miss. Ct. App. 2005)).

¶22. Here, we cannot conclude that the record, standing alone, affirmatively shows ineffectiveness of constitutional dimensions, and the parties have not stipulated that the record is adequate to allow this Court to make findings without consideration of the trial

judge's findings of fact. As such, we decline to address this issue on direct appeal and note that Lowe is not precluded from raising his ineffective-assistance claim in a motion for post-conviction relief.

### 3.     Sufficiency and Weight of the Evidence

¶23.    Lowe jointly argues that the evidence was insufficient to support his conviction and that the verdict was unsupported by the weight of the evidence. The State, in response, argues that the evidence was sufficient and that the weight of the evidence supported the verdict. We address each contention in turn.

### a.     Sufficiency

¶24.    Appellate courts will reverse for insufficiency of the evidence "only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993) (citations omitted). Due to the evidence we delineated in subheading one of this opinion, we do not find that "reasonable and fair-minded jurors could only find [Lowe] not guilty." *Id*. We therefore find no merit to this issue.

### b.     Weight

¶25.    "[W]hen confronted with a claim that the conviction in a case is contrary to the overwhelming weight of the evidence, we defer to the discretion of the trial judge, and we will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable

14

injustice." *Jackson v. State*, 68 So. 3d 709, 720 (¶37) (Miss. Ct. App. 2011) (citation and internal quotations omitted). Again, given the evidence discussed under subheading one, we do not find that Lowe's guilty verdict is so contrary to the weight of the evidence that allowing it to stand would sanction an unconscionable justice. We find no merit to this issue.

### 4.     Introduction of Prior Conviction

¶26.    Lowe argues that the trial court erroneously admitted evidence of his prior conviction for child pornography pursuant to Rule 404(b) of the Mississippi Rules of Evidence. The State, in response, argues that Lowe opened the door to prior-conviction evidence when his trial counsel asked Stringer whether her stepson was currently serving time for child-pornography possession.

¶27.    Rule 404(b)(1)-(2) provides:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character . . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

¶28.    Lowe argues that the trial judge erred in his determination that the door had been opened to the topic of prior convictions because no evidence was presented that Stringer's stepson ever had access to Lowe's laptop or that he knew the password to the "Muzicman" account. Therefore, Lowe maintains that there was no valid argument that Stringer's stepson was the source of the child pornography, such that there was a question of identity under Rule 404(b), which would warrant admission of Lowe's prior conviction. Lowe further

15

argues that introducing evidence of his prior conviction was more prejudicial than probative of guilt.

¶29.    We decline to address the issue of whether the door was opened to evidence of Lowe's prior conviction, because we find that such evidence was admissible under Rule 404(b) for the purpose of proving identity.  Rule 404(b) makes no mention of the need for any door to be opened before admitting such evidence.  Because the issue of identity was called into question when Lowe's counsel began suggesting during Stringer's cross-examination that another person may have accessed Lowe's laptop and downloaded the child pornography, evidence of Lowe's prior conviction for the purpose of establishing his identity was properly admitted under Rule 404(b).  We find no merit to this issue.

### 5.    Introduction of Evidence of Flight and Flight Instruction

¶30.    Lowe argues that the court erred both in admitting evidence of his flight and in giving a jury instruction on flight.  In response, the State argues that the introduction of evidence of flight and the flight instruction were proper because Lowe's flight was unexplained and probative of his guilt.

¶31.    "Jury instructions are reviewed under an abuse-of-discretion standard." *Burgess*, 178 So. 3d at 1272 (¶14).  "When read together, if the jury instructions state the law of the case and create no injustice, then no reversible error will be found." *Id*.  "Generally, it is a well-established principle that flight is admissible as evidence of consciousness of guilt." *Fuselier v. State*, 702 So. 2d 388, 390 (¶4) (Miss. 1997) (citation omitted).  "[A]n instruction that

16

flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge." *Id*. (citations omitted). "Evidence of flight is inadmissible where there is an independent reason for flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant." *Id*. (citation omitted).

¶32. First, Lowe argues that the trial court erroneously allowed evidence that he fled the state after learning that the police were looking for him, because there were independent reasons for his flight—e.g., that he could have fled because he violated the terms of his probation, because he knew that he faced accusations for showing a pornographic movie to a minor, or because he faced accusations of child molestation—and that the admission of such evidence was more prejudicial than probative. Lowe also argues that the trial court knew he was on probation and that such knowledge was an independent reason for flight that could not be explained to the jury due to its prejudicial effect on Lowe; thus, Lowe argues that it should not have been admitted.

¶33. The jury heard testimony from Taylor, who admitted that she left a note on Lowe's truck, warning him that the police were searching for him and his laptop. The jury also heard from Claxton, Lowe's employer, who stated that Lowe disappeared after July 1, 2009, and did not even return for his final paycheck. Investigator Sumrall testified that Lowe's truck was found in a Wal-Mart parking lot in Columbia, Mississippi, and that Lowe was ultimately located by the United States Marshall Service in a motel room in San Diego, California.

17

These facts are probative of Lowe's guilt or guilty knowledge. Thus, the trial court was within its discretion to allow evidence of Lowe's flight.

¶34. Second, Lowe argues that the trial judge should not have allowed a jury instruction on flight. At trial, the judge stated:

> [Lowe] couldn't be found beginning July 2nd for a period of time after that. There is no explanation before the [c]ourt at present in the form of admitted evidence. So at this point his flight is unexplained. If all that was necessary in order to avoid a flight instruction was a suggestion by the attorneys that the flight was for some other reason, then a flight instruction could never be given.

The trial judge subsequently admitted the flight instruction. We hold that, given the evidence described above, the trial judge did not abuse his discretion in giving the flight instruction. Thus, this issue has no merit.

### B. Issues Presented Pro Se by Lowe

#### 1. Motion to Suppress Evidence

¶35. Lowe argues that the court erred in denying his motion to suppress the pornographic videos recovered from the laptop due to a lack of probable cause and because the search warrant was overly broad. In response, the State maintains that the trial court properly denied Lowe's motion because there was probable cause for the search warrant's issuance based on a totality of the circumstances. The State further argues that even if the search warrant was invalid, the trial court's application of the good-faith exception renders its reliance on the warrant proper, and the evidence obtained was thereby admissible.

¶36. "The standard of review regarding the admission or exclusion of evidence is abuse of

18

discretion." *Terrell v. State*, 952 So. 2d 998, 1005 (¶31) (Miss. Ct. App. 2006) (citation omitted). "This Court shall not disturb a trial court's decision unless it is clearly wrong." *Id*. (citation omitted). "When reviewing a finding of probable cause to issue a warrant[,] [an appellate court] does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause." *Foley v. State*, 914 So. 2d 677, 685 (¶12) (Miss. 2005) (citation and internal quotations omitted). "The task of the issuing magistrate is simply to make a practical, common-sense decision based on all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information." *Id*. at 685-86 (¶12) (citation and internal quotations omitted).

¶37.     This Court in *Renfrow v. State*, 34 So. 3d 617, 622 (¶2) (Miss. Ct. App. 2009), held that there was probable cause to execute a search warrant for the defendant's computer where a child and that child's sibling—ages four and six years old—indicated that the defendant had shown them "pictures of naked adults and children" and that the defendant had touched them inappropriately. Similarly, here, Investigator Sumrall received more than one report that Lowe had inappropriately touched a child. Further, C.S. told Investigator Sumrall that Lowe went out of the room and retrieved his laptop to show her a video of naked people. We find that there was a substantial basis for the magistrate's determination of probable cause to issue the warrant, based on the totality of the circumstances. As such, we hold that the search warrant was proper and decline to address the issue of the good-faith exception.

### 2.     *Pro Se Motion in Limine to Exclude Evidence*

¶38.    Lowe argues that the court erred in denying his pro se "Motion in Limine to Exclude Evidence."  Lowe argues that the evidence should have been excluded because it  (1) was illegally obtained, (2) lacked authenticity and foundation, (3) was not the best evidence, and (5) was unduly prejudicial.  Lowe further asserts that the court showed bias against him because it denied all of Lowe's pro se motions.

¶39.    As stated previously, "[t]he standard of review regarding the admission or exclusion of evidence is abuse of discretion."  *Terrell*, 952 So. 2d at 1005 (¶31).  "This Court shall not disturb a trial court's decision unless it is clearly wrong." *Id*.

¶40.    First, because of the reasons specified in section B, subsection one of this opinion, we find no merit to Lowe's contention that the evidence should have been excluded for the reasons he suggest.  Second, Lowe provides no evidence to support his argument that the trial court denied his pro se motions because of bias against him.  As such, we find no merit to this issue.

### 3.     *Pro Se Motion Requesting a "Franks v. Delaware" Hearing*

¶41.    Lowe argues that the court erred in denying his pro se motion requesting a "*Franks v. Delaware*" hearing.  The State, in response, contends that Lowe did not make the required substantial preliminary showing that the affidavit contained any knowingly made false statement or reckless disregard for the truth.

¶42.    The United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155-56

20

(1978), held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

We agree with the State. While Lowe contends that Investigator Sumrall knowingly made false statements or had a reckless disregard for the truth in executing the affidavit accompanying the search warrant, Lowe failed to provide any evidence to support that contention. As such, this issue is without merit.

### 4. Motion to Suppress Search Warrant

¶43. Lowe argues a second time in his brief on appeal that the court erred in denying his motion to suppress the search warrant executed on his laptop. For the reasons discussed under section B, subsection one, we find this issue without merit.

### 5. Pro Se Preconviction Motion for Writ of Habeas Corpus

¶44. Lowe argues that the trial court erred in denying his pro se motion for writ of habeas corpus. In response, the State cites *Smith v. Banks*, 134 So. 3d 715, 719 (¶10) (Miss. 2014), wherein the Mississippi Supreme Court noted, "After a defendant in a criminal case has been indicted, as here, the habeas corpus court has no power to discharge the defendant, but is

21

limited to granting bail." (Citation omitted).

¶45.    Here, Lowe was indicted on December 8, 2009. Lowe filed his pro se motion for writ of habeas corpus on November 17, 2015. The court entered an order dismissing Lowe's motion on November 18, 2015, stating that, although the motion was untimely, the court had considered it and denied it on the basis that the arguments therein had largely been discussed and ruled upon during the November 16, 2015 hearing, and that the remaining issues involved factual disputes to be resolved by the jury.

¶46.    Lowe's motion—which totaled forty-seven pages—focused on the evidence against him and his concerns about his lawyers, not whether he should have been granted bail. As such, the trial court was correct in dismissing the motion. This issue is without merit.

### 6.    *Motion for Relief from Judgment*

¶47.    Lowe argues that the court erred in denying his motion for relief from judgment or order under Rule 60(b)(4) and (6) of the Federal Rules of Civil Procedure. The State responds that this issue is a criminal matter under Mississippi law. As such, the Federal Rules of Civil Procedure do not govern. We agree with the State and dismiss this issue for lack of merit.

### 7.    *Trial Court's Removal of the Words "From the Internet" in the Jury Instructions*

¶48.    Lowe argues that the court erred in omitting the words "from the internet" in its jury instructions, thereby "constructively amending [the] indictment through [the jury] instructions and conforming [the] instructions to the evidence adduced at trial rather than the

22

indictment." In response, the State maintains (1) that defense counsel failed to object to the instructions until after they were read to the jury, and (2) that it was not required to prove that the videos were downloaded "from the internet"; rather, proving that the videos were found on Lowe's laptop was sufficient to meet its burden of proof under the statute.

¶49. Our supreme court in *Bell v. State*, 725 So. 2d 836, 855 (¶58) (Miss. 1998) (citing *United States v. Miller*, 471 U.S. 130 (1985)), held that "[a] constructive amendment of the indictment occurs when the proof and instructions broaden the grounds upon which the defendant may be found guilty of the offense charged so that the defendant may be convicted without proof of the elements alleged by the grand jury in its indictment." "Not all variances between the indictment and instructions constitute a constructive amendment, nor do they rise to plain error. The central question is whether the variance is such as to substantially alter the elements of proof necessary for a conviction." *Id*. at (¶61). The *Bell* court went on to cite the Fifth Circuit Court of Appeals' analysis in *United States v. Adams*, 778 F.2d 1117 (5th Cir. 1985), that

> courts [must] distinguish between constructive amendments of the indictment, which are reversible per se, and variances between indictment and proof, which are evaluated under the harmless error doctrine. The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment. If, on the other hand, the variation between proof and indictment does not effectively modify an essential element of the offense charged, "the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant."

23

*Bell*, 725 So. 2d at 855-56 (quoting *Adams*, 778 F.2d at 1123).

¶50.    First, we note that Lowe did not object when the trial judge refused instructions D-16, D-17, D-18, D-19, and D-20, remarking, "I don't find that the statute requires [']via the internet[.']"    After the instructions were read to the jury and the jury was sent out to deliberate, the trial judge noted that he had omitted the phrase "via the internet" from other instructions where the phrase had been included, which he only noticed for the first time upon reading the instructions to the jury.    Lowe's counsel objected, to which the trial judge responded, "All right.    Well let me say on the record that I do not believe the law or the wording of the indictment requires in this case that the pornographic material be received only via the internet."

¶51.    Notwithstanding the fact that Lowe's counsel failed to object to the instructions until after they were read to the jury, we do not find that the instructions constructively amended the indictment.    Section 97-5-33(3), under which Lowe was indicted, states: "No person shall, by any means including computer, knowingly send, transport, transmit, ship, mail or receive any photograph, drawing, sketch, film, video tape or other visual depiction of an actual child engaging in sexually explicit conduct."    Lowe's indictment provides, for each count, that Lowe "downloaded on or about the 6th day of June, 2009 A.D., did [sic] willfully, intentionally, unlawfully, and knowingly, via the internet/computer receive a visual depiction . . . of an actual child under eighteen years (18) of age engaging in sexually explicit conduct[.]"    The trial court instructed the jury:

24

If you find from the evidence in this case beyond a reasonable doubt that:

1.      [Lowe], on or about June 6, 2009, in the Second Judicial District of Jones County, Mississippi;

2.      Did willfully, intentionally and knowingly, via the internet/computer, download and receive a visual depiction image of an actual child under eighteen (18) years of age engaging in sexually explicit conduct;

then you shall find the defendant . . . guilty[.]

¶52.   We do not find that an essential element of the crime of possession of child pornography was altered by the language of the indictment. Requiring the trial court to add the phrase "via the internet" to the jury instructions would have required the jury to find beyond what section 97-5-33(3) provides. As such, we find no merit to this issue.

### 8.      *Motion to Dismiss*

¶53.   Lowe argues that the court erred in denying his motion to dismiss on the basis that the State's expert witness was unable to provide how the child pornography got onto Lowe's laptop or where the child pornography originated. The State, in response, contends that it was not required to answer either question; rather, it was only required to prove that Lowe, in fact, possessed the child pornography. Section 97-5-33(3), under which Lowe was indicted, does not require the State to show how a defendant came to possess child pornography or where the child pornography originated. Thus, we agree with the State, and this issue is without merit.

### 9.      *Allowing Jury to View Videos*

¶54.   Lowe argues that the court erred in allowing the jury to view the videos of child

25

pornography obtained from his laptop "without proof and/or foundation of how [or] where the images came from, what source [was] used, venue, [or] jurisdiction, [and where it could not] identify Lowe as [the] user [of the laptop] and [there was] no proof Lowe ever viewed the alleged files[,] and without filtering the evidence through [Mississippi] Rules of Evidence 403 [and] 803 out of [the] jury's presence[.]" Again, we reiterate that the State was not required to prove where the child pornography came from or how it got onto the laptop. Further, we note that the question of whether Lowe was the user of the laptop who obtained the child pornography was a question of fact for the jury.

¶55. At the time the State sought to introduce the videos into evidence, Lowe objected, and the court properly considered the admission of the videos pursuant to the Mississippi Rules of Evidence. As previously stated, "[t]he standard of review regarding the admission or exclusion of evidence is abuse of discretion." *Terrell*, 952 So. 2d at 1005 (¶31). "This Court shall not disturb a trial court's decision unless it is clearly wrong." *Id*. Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

The court properly considered the probative nature of the videos and determined that the jury needed to view them in order to determine whether they, in fact, depicted child pornography. We do not find that the court erred in admitting the videos into evidence and showing them to the jury.

¶56. **AFFIRMED.**

26

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**